UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOOPS, LLC, and LOOPS FLEXBRUSH LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AMERCARE PRODUCTS, INC., *et al.*, <br><br> Defendants. | CASE NO. C08-1064RSM <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

## **I. INTRODUCTION**

This matter comes before the Court on Plaintiffs' motion for preliminary injunction. (Dkt. #5). Plaintiffs seek an order from the Court enjoining Defendants from selling their patented toothbrushes at correctional facilities in the United States. Plaintiffs indicate that they will succeed on the merits because they have a valid patent on the toothbrushes at-issue, and Defendants had notice of these patents. They also contend that they have suffered irreparable harm because Defendants were awarded a contract with a correctional facility that Plaintiffs would have otherwise received. Furthermore, they indicate that they have lost nearly 50% of their business as a result of Defendants' infringement, while the toothbrushes that Defendants sold only represent a small portion of their entire business. Therefore, they argue that the balance of hardships weighs sharply in their favor.

Defendants respond that they no longer manufacture, import, market, or sell the

ORDER
PAGE - 1

toothbrushes Plaintiffs claim they have a patent for, and have no intention to do so in the future. They specifically contend that they originally did not have notice of Plaintiffs' patents, and when they learned of the patents, they immediately discontinued selling and manufacturing them. Alternatively, Plaintiffs indicate that if the Court grants Plaintiffs' motion, they request that the language of the order be crafted in accordance with the relevant patent and trademark statutes, and limit their geographical scope to the United States.

For the reasons set forth below, the Court DENIES Plaintiffs' motion for a preliminary injunction.

## II. DISCUSSION

### A. Background

Plaintiffs Loops, LLC and Loops Flexbrush LLC (collectively "Plaintiffs") sell oral hygiene products to correctional facilities nationwide. In August of 2006, Plaintiffs began selling a flexible handle toothbrush to the New York City Department of Corrections, and continued to do so through June of 2007. During this time period, Plaintiffs sold over 329,000 toothbrushes to the New York City Department of Corrections.

According to Plaintiffs, the hallmark of its toothbrush is its unique flexible handle. Regular toothbrushes in the correctional environment are a major weapon in the hands of prison inmates as they can be sharpened into stabbing and slashing devices. Plaintiffs' toothbrush eliminates these safety concerns and are used by many United States correctional facilities as a substitute for regular toothbrushes.

Beginning in January of 2006, Defendant Wendy Hemming ("Ms. Hemming"), a principal of Defendant Phoenix Trading, Inc. dba Amercare Products, Inc. ("Amercare"), contacted Plaintiffs with the intention of selling some of Plaintiffs' products. Similar to Plaintiffs, Defendant Amercare sells oral hygiene products to correctional facilities. Moreover, from January 2006 to January 2007, Defendant Amercare ordered "Floss Loops Safety Dental Floss" from Plaintiffs. Defendant Amercare also requested samples of Plaintiffs' flexbrush toothbrushes during this time. According to Plaintiffs, each of the samples they sent to Defendant Amercare clearly identified that the toothbrushes were "patent pending" on both the

toothbrush itself and on its packaging.

On January 23, 2007, Ms. Hemming specifically expressed her interest in selling Plaintiffs' toothbrushes and floss. She requested that Plaintiffs give Defendant Amercare all of Plaintiffs' contracts in order to allow Defendant Amercare to manage these contracts.[1] Plaintiffs denied the request. Three days later, Ms. Hemming once again requested that Plaintiffs provide Defendant Amercare with their contracts. Plaintiffs once again denied Ms. Hemming's request.

A few months later, in April of 2007, the NYC-DCS put out an Invitation to Bid for a contract to supply NYC-DCS with toothbrushes from August 30, 2007 through November 29, 2010. According to Plaintiffs, the bid referred to the manufacturer as "Loops Flexbrush or Equal" and the brand as "Loops Flexbursh #FBM02 or equal." (Decl. of Kayser, ¶ 58). Plaintiffs also claim that the Invitation to Bid also required a manufacturer's authorization. (*Id*.). Plaintiffs eventually submitted their bid on April 24, 2007. (*Id*., ¶ 59). Unbeknownst to Plaintiffs at the time, Defendant Amercare also placed a bid on the NYC-DCS contract at a price approximately 50% lower than the price Plaintiffs set with its bid. The NYC-DCS awarded Defendant Amercare the contract, and according to Plaintiffs, Defendant Amercare has provided approximately 225,000 toothbrushes to NYC-DCS from July of 2007 through February 2008.[2]

Plaintiffs further contend that Defendant Amercare has been manufacturing the counterfeit toothbrushes in China. In addition, Plaintiffs indicate that at a trade show in China on October of 2007, a representative of Plaintiffs discovered that Defendant Amercare was advertising the infringing toothbrushes at a display booth. Plaintiffs also obtained United States Customs Manifest Journals for shipping containers imported into the United States in the name

---

[1] Apparently, Defendant Amercare had previously contracted with the New York City Department of Citywide Services ("NYC-DCS") and supplied them with toothbrushes for their inmates. However, once Plaintiffs began selling the flexible toothbrushes at-issue, NYC-DCS began purchasing from Plaintiffs.

[2] Plaintiffs eventually acquired this information through Freedom of Information Law ("FOIL") requests to New York City's agencies for public records. (Decl. of Kayser, ¶¶ 219 - 224).

ORDER
PAGE - 3

of Amercare. According to Plaintiffs, the journals indicate that Defendant Amercare has imported 158 containers, the majority of them from China. Plaintiffs further contend that from April 2, 2007 through June 30, 2008, Defendant Amercare has imported 26 containers that contained the infringing toothbrushes.

Importantly, Plaintiffs originally submitted their patent application for the flexible toothbrushes at-issue on August 18, 2004. The United States Patent & Trademark Office eventually granted the application on February 26, 2008, and issued United States Patent 7,334,286 for the flexible toothbrushes. (Decl. of Kayser, ¶ 218, Ex. 95). Defendants claim that they did not receive actual notice of Plaintiffs' patent until June of 2008.

On July 11, 2008, Plaintiffs filed the instant lawsuit, alleging several causes of action under patent, trademark, and contract law. They now move for a preliminary injunction seeking to enjoin Defendant Amercare from importing, manufacturing, or selling the flexible toothbrushes that they sold and allegedly continue to sell to the NYC-DCS. Notably, Defendants also brought a motion to dismiss, strike, and clarify pursuant to FRCP 12, which the Court denied on November 13, 2008.

**B. Standard of Review**

35 U.S.C. § 283 vests district courts with jurisdiction to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Under this statute, a preliminary injunction will issue if the moving party can establish: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994). "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech, Inc. v. Abbot Labs*, 849 F.2d 1446, 1451 (Fed. Cir. 1988). A preliminary injunction in a patent infringement lawsuit will not issue "unless [the movant] establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc.*

*v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citations omitted) (emphasis in original). Ultimately, a preliminary injunction is "an extraordinary and drastic remedy" and "one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (citations omitted) (emphasis in original). The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the sound discretion of the district court. *Novo Nordisk of N. Am., Inc. v. Genetech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996).

### C. Likelihood of Success on the Merits

The first factor to consider in the Court's analysis is to determine whether the party seeking the injunction will likely prevail on the merits. Plaintiffs claim they have met this requirement because they have a valid patent on the toothbrushes at-issue, and because Defendants are infringing on Plaintiffs' patent as evidenced by the very nature of the NYC-DCS's Invitation to Bid. However, Plaintiffs' arguments are significantly underscored by the fact that the bulk of the allegations that form the basis of Plaintiffs' motion occurred *prior* to the acceptance of Plaintiffs' patent application by the United States Patent & Trademark office. While the Court agrees with Plaintiffs that a patent is presumed valid at every stage of the litigation, *see PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996), it is a fundamental maxim in patent law that "no infringement can occur *before* the issuance of the patent." 1 J. Gladstone Mills III et al., *Patent Law Fundamentals*, § 2.17 (2d ed. 1991) (emphasis added). Moreover, the marking "patent-pending" only "serves to notify that the marked articles are not in the public domain and *may* be subject to inchoate patent rights and future protection." *Conopco, Inc. v. May Dept. Stores Co.*, 784 F. Supp. 648, 674 (E.D. Mo. 1992) (citation omitted) (emphasis added). "Therefore, the article to which this language is affixed is technically not, at the time of its marking, subject to a subsisting patent covering the invention to which the marking refers." 1 J. Gladstone Mills III et al, *supra*. Indeed, as the Court indicated in its Order denying Defendants' motion to dismiss, the Federal Circuit has made clear that:

A "patent pending" notice gives one no knowledge whatsoever. It is not even a

guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

*State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235 (Fed. Cir. 1985).

Here, it is undisputable that Plaintiffs' patent application was granted on February 28, 2008. As indicated, almost all of Defendants' infringing activities took place prior to this date. For example, Plaintiffs allege that Defendants requested samples and ultimately manufactured Plaintiffs' toothbrushes on their own throughout 2006 and 2007. But it is undisputed that the samples Plaintiffs sent at this time were marked with the words "patent-pending" and were sent prior to the issuance of Plaintiffs' patent. Plaintiffs additionally allege that Defendants fraudulently obtained the NYC-DCS contract and shipped approximately 225,000 toothbrushes to NYC-DCS. However, it is clear that the Invitation to Bid was sent and ultimately awarded to Defendants prior to the issuance of Plaintiffs' patent. Plaintiffs' also claim that Defendants were advertising Plaintiffs' toothbrushes at a trade show in China. Again, this took place in October of 2007, a few months before the issuance of Plaintiffs' patent. Plaintiffs therefore cannot clearly show that they will succeed on the merits when the activities that constitute the basis of their patent infringement lawsuit occurred prior to the issuance of their patent. Indeed, the following excerpt from the patent law treatise quoted above is on point:

> Copying or otherwise simulating an article marked merely "patent pending" during only the pendency of the corresponding patent application(s) before the Patent & Trademark Office *would not, by itself, be unlawful or otherwise constitute an invasion of any of the patentee's rights*. However, any unauthorized making, using, or selling of articles *from the time of issuance of letters patent would constitute infringement*. Anyone engaged in the unauthorized manufacture of the patentee's invention before the issuance of letter patent would have to close down such operations upon the issuance of the patent, lest he be subject to liability as an infringer.

1 J. Gladstone Mills III et al., *supra*. (emphasis added).

As such, to succeed on the merits, Plaintiffs must establish that Defendants were engaged in patent infringement after February 28, 2008. To support this argument, Plaintiffs contend that: (1) Defendants are continuing to sell the infringing toothbrushes to NYC-DCS, and will continue to do so throughout the duration of the contract which runs through 2010; and (2) Defendants are also selling the infringing toothbrushes to a correctional facility in Iowa.

However, Plaintiffs do not offer any objective evidence in support of these statements. Without such evidence, the Court will not accept such naked allegations at face value. Additionally, Defendants refute both claims, arguing that they have stopped manufacturing and selling the toothbrushes at-issue once they received actual notice of Plaintiffs' patent in June of 2008. Defendants also claim that the reference to the Iowa correctional facility, which notably was asserted by Plaintiffs in their reply, was disingenuous because Defendants have evidence to refute such a claim. And while the Court equally does not accept these allegations at face-value, it would be premature for the Court to conclude that either party's assertions are true without the benefit of discovery.

Alternatively, Plaintiffs may succeed on the merits by showing that Defendants had "constructive notice" of Plaintiffs' patent. A party claiming patent infringement can "either provide constructive notice (through marking) or actual notice in order to avail itself of damages" under 35 U.S.C. § 287(a). *American Medical Sys. Inc., v. Medical Eng'g Corp.*, 6 F.3d 1523, 1537, n.18 (Fed. Ci. 1993). Furthermore, "[i]n determining whether the patentee marked its products sufficiently to comply with constructive notice requirement, the focus is not on what infringer actually knew, *but on whether patentee's actions were sufficient*, in the circumstances, to provide notice[.]" *Halliburton Services v. Smith Intern. Inc.*, 317 F. Supp. 2d 719, 723 (E.D. Tex. 2004) (citation omitted) (emphasis added). This inquiry, however, is heavily fact-intensive. Moreover, Plaintiffs do not provide any arguments that they have met the notice requirements of 35 U.S.C. § 287(a) outside of their broad allegation in their complaint that Defendants had sufficient notice. Therefore the Court does not find Plaintiffs have established that Defendants had constructive notice at this stage of the litigation.

In sum, Plaintiffs did not have their patent application accepted by the United States Patent & Trademark office until February 28, 2008. Furthermore, Plaintiffs do not focus on Defendants' conduct following this date. Under such circumstances, the Court finds that Plaintiffs have not shown that they will succeed on the merits.

**D. Irreparable Harm**

The second factor courts consider in a preliminary injunction analysis is whether the

moving party can establish that it will suffer irreparable harm if an injunction does not issue. Significantly, most courts adopt a sliding scale approach wherein the probable success on the merits and the possibility of irreparable harm "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Belgium v. U.S.*, 452 F.3d 1289, 1293 (Fed. Cir. 2006). In other words, the greater the relative hardship to the party seeking the injunction, the less the probability of success must be shown, and vice versa. *See Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). No one factor is necessarily dispositive, "because the weakness of the showing regarding one factor may be overborne by the strength of the others." *Belgium*, 452 F.3d at 1293 (internal quotations and citation omitted).

Thus, as applied to the instant case, Plaintiffs must make a strong showing that they will suffer irreparable harm because they have not clearly shown they will succeed on the merits. To support this showing, Plaintiffs argue that a patentee is presumed to have suffered irreparable harm where another infringes upon the patentee's patent. (Dkt. #5 at 19) (*citing Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996)). However, for the reasons set forth above, the Court cannot definitively find that Defendants are infringing Plaintiffs' patent when the majority of the activities complained of by Plaintiffs occurred prior to the issuance of Plaintiffs' patent. Therefore the presumption of irreparable harm does not apply in this case.

Plaintiffs also argue that they will suffer irreparable harm because they have lost market share and business relationships due to Defendants' alleged infringement. Plaintiffs indicate that the toothbrushes at-issue, as well as the floss they sell, represent 95% of their sales, and that their sales have decreased significantly since April of 2007. However, Plaintiffs do not clearly delineate what portion of the 95% in sales represents the sale of the toothbrushes at-issue, and what portion represents the sale of floss. This is clearly significant because Plaintiffs are alleging that Defendants are only infringing upon their toothbrushes.

In addition, Plaintiffs' arguments are significantly undermined by their statement that

ORDER
PAGE - 8

they "have developed a niche market of providing patented and trademarked safety dental products for correctional inmates . . . In doing so, Plaintiffs have established substantial goodwill and reputation with *hundreds of federal, state and county jails nationwide. Numerous correctional facilities allow inmates to exclusively use Plaintiffs' products to the exclusion of other competing products.*" (Dkt. #5 at 21) (emphasis added). Plaintiffs also state that their complaint that their toothbrushes "are used by *many* U.S. correctional facilities." (Pls.' Compl., ¶ 16) (emphasis added). Therefore Plaintiffs' suggestion that the loss of the NYC-DCS has had a crippling effect on its business seems contrary to the assertions they make in their pleadings that they are serving "hundreds" of jails nationwide. Irreparable harm does not seem likely to result if the Court does not issue an injunction because by Plaintiffs' own assertions, "numerous correctional facilities" are using Plaintiffs' products. As a result, the Court finds that Plaintiffs have not clearly shown that irreparable harm will result at this stage of the proceedings.

### E. Remaining Factors

As mentioned above, a preliminary injunction in a patent infringement case will not issue "unless [the movant] establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com,* 239 F.3d at 1350 (emphasis in original). Therefore while the Court recognizes that no one factor is dispositive, a party must, at the very least, establish both factors discussed above. Because the Court has ruled that Plaintiffs have not shown a high likelihood of success or shown irreparable harm, the Court finds it unnecessary to analyze the remaining factors in the preliminary injunction inquiry. Accordingly, Plaintiffs' motion is denied.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs' Motion for Preliminary Injunction (Dkt. #5) is DENIED. The Court shall issue its initial scheduling order once Defendants answer Plaintiffs' amended complaint as directed by the Court's order denying Defendants' motion to dismiss.

(2) The Clerk shall provide a copy of this Order to all counsel of record.

1

2    DATED this 20th day of November, 2008.

3

4                                                            RICARDO S. MARTINEZ
                                                             UNITED STATES DISTRICT JUDGE
5