UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOOPS, LLC, a Delaware limited liability
company, et al.,

                    Plaintiffs,

          v.

PHOENIX TRADING, INC., dba
AMERCARE PRODUCTS, INC., a
Washington corporation, et al.,

                    Defendants.

CASE NO. C08-1064 RSM

ORDER GRANTING AMERCARE
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on the motion for partial summary judgment brought

by Defendants Phoenix Trading, Inc. ("Amercare"), Wendy Hemming, and Jeffrey Hemming

(collectively "Defendants" or "Amercare Defendants").  (Dkt. #153).  Plaintiffs Loops, LLC

and Loops Flexbrush, LLC (collectively "Loops") allege in this action that Amercare

fraudulently obtained a sample of the patented Loops Flexbrush, sent the sample to China to be

copied, and sold the infringing copies at a low price, outbidding Loops on a supply contract.

Loops brings claims for patent infringement, violations of the Lanham Act, unfair competition

under Washington common law, violations of the Washington Consumer Protection Act, and

fraud.  Defendants seek summary judgment declaring that Loops is not entitled to monetary

ORDER
PAGE - 1

relief on its patent infringement claim and not entitled to any relief on all other claims. The

Court has reviewed the parties briefs including supplemental briefing regarding Loops's fraud

claim and has decided this motion is appropriate for disposition without oral argument.

Because the Court finds no dispute of material fact, the Court grants the motion in its entirety.[1]

## II.  FACTS

Steven Kayser is the inventor of the Loops Flexbrush, a small flexible handle toothbrush

designed for safe use in prisons. The Flexbrush comes in 4.25 inch and 3 inch sizes. It is made

of flexible material, allowing the toothbrush to be bent in half or twisted into a spiral without

breaking. The Flexbrush is well-suited for use in correctional facilities because its soft handle

cannot be fashioned into a shank. Kayser is the founder of Plaintiffs Loops LLC and Loops

Flexbrush LLC and has assigned his relevant intellectual property rights to those companies.

Loops also sells prison-safe dental floss.

Amercare is a Washington corporation that imports a wide variety of health and toiletry

items such as toothbrushes, shampoo, and soap, and resells them to customers, including

prisons. Defendant Wendy Hemming ("Hemming") is the majority shareholder and president

of Amercare. Her husband, Defendant Jeffrey Hemming, was at various times relevant to this

lawsuit a minority shareholder, officer, and employee of Amercare.

On January 13, 2006, Hemming telephoned Kayser requesting that Loops provide her

with price quotations for Loops' dental floss for one of Amercare's clients. She also requested

that Loops provide her with samples of all its products, including the Loops Flexbrush. Loops

sent samples of its 4.25 inch toothbrush in the colors blue and white.

Approximately two weeks later, Hemming contacted Loops to order Loops's dental floss

to distribute to her customers. During the next year, she continued to order floss periodically,

placing six orders with Loops between January 26, 2006 and January 23, 2007.

---

[1] Defendants' motion is titled a motion for summary judgment, but in fact it is a motion for partial summary judgment as it does not seek to dismiss Plaintiffs' claim for patent infringement in its entirety.  It only seeks to limit the available remedies for that claim.

ORDER
PAGE - 2

In May 2006, Amercare placed a bid with the New York City Department of Corrections ("NYC-DOC") to supply Loops Flexbrush toothbrushes.  The bid sheet Amercare submitted stated that Amercare was the bidder and that it was offering to supply "Loops Flexbrush." Loops was not aware that Amercare submitted this bid, nor had Loops agreed to sell Amercare its Loops Flexbrush or allow Amercare to distribute it.  Amercare did not win its 2006 bid and consequently never sold any Loops Flexbrushes to NYC-DOC.  Between August 2006 and June 2007, NYC-DOC purchased Loops Flexbrushes from Loops.

On January 23, 2007, Hemming and Kayser had another telephone conversation. Hemming informed Kayser that she wished to sell the Loops Flexbrush and she would like Loops to "give" all of its flexible handle toothbrush contracts, including its NYC-DOC contract, to Amercare so that Amercare could be a reseller or distributor of the Loops Flexbrush.  Kayser believed that to allow Amercare to be a reseller would constitute "bid rigging" or "collusion" and refused.  Hemming requested that Loops provide additional samples of the Loops Flexbrush.  On January 26, 2007, Kayser and Hemming met in person at Amercare's offices.  Hemming again requested that Loops allow Amercare to service its contracts and resell its Flexbrush, and Kayser again refused.

In February 2007, Loops sent Amercare additional samples of its Flexbrush toothbrush in response to Amercare's earlier request.  These samples were semi-transparent or clear; they were not blue.

Sometime in the early months of 2007, NYC Department of Administrative Services decided to put the NYC-DOC toothbrush contract up for bid.  Loops provided product specification sheets, information regarding the material composition of its toothbrushes, and samples of its Flexbrush to NYC-DOC.  NYC-DOC published bid documents seeking a "Loops Flexbrush # FBM 02 or equal" for the period August 30, 2007 to November 29, 2010.

On April 23, 2007, Hemming made one last attempt to convince Kayser to allow Amercare to service Loops's contracts.  Hemming admits that before the meeting began, she intended that if the negotiation failed, she would send the samples of the Loops Flexbrush to China to have them copied and would use those copies to bid against Loops for the NYC-DOC

contract.  She did not reveal this intention to Kayser.  Kayser did refuse Hemming's offer, and Hemming carried out her plan.  Immediately following that conversation, Hemming sent samples of the Loops Flexbrush to Mr. Lai in Taiwan to have them copied by a Chinese manufacturer.[2]  Hemming was familiar with the price Loops would charge Amercare for Flexbrushes and intended to bid lower than that amount to beat Loops's bid.  According to Hemming, the Flexbrush sample she sent to China was blue, meaning that it was from the batch of samples provided in 2006.  Molds for manufacturing the copied toothbrushes were ordered in May and June 2007.

On April 24, 2007, Amercare submitted a bid to NYC-DOC.  The bid document stated that Amercare was willing to provide the "Amerfresh Soft Handle = Equal to Loops FBM02" made by "Amercare Products, Inc."  The Amerfresh Soft Handle, manufactured in China, is an identical copy of the blue Loops Flexbrush in every respect except one.  Whereas the words "LoopS™ Flexbrush™" are embossed in raised lettering on the back side of the head of the Loops Flexbrush (opposite the bristles), the name "AmerCare" is embossed on the Amerfresh toothbrush in the same place and in the same font.

Having the lowest bid, Amercare won the contract to provide flexible toothbrushes to NYC-DOC.  Amercare's bid was more than 60% lower than Loops's bid.  There were no other qualified bidders.  Amercare provided NYC-DOC with Amerfresh Soft Handle toothbrushes from October 31, 2007 to May 22, 2008.

Loops submitted its patent application for the Loops Flexbrush in August 2004.  The patent, number 7,334,286 B2 ("'286 patent")  did not issue until February 26, 2008.  The Loops Flexbrush does not have, and never has had, any markings on the toothbrush itself indicating that it is patented or that a patent is pending.  At all times prior to September 2008, the disposable plastic packaging on each individual Flexbrush, including the samples given to Amercare, indicated "patent pending."  Flexbrushes with packaging listing the product's patent

---

[2] Loops contends that there is a factual dispute regarding whether Hemming sent samples of the Loops Flexbrush to Mr. Lai to be copied in 2006,  after receiving the first batch of samples, rather than 2007, after her April conversation with Kayser.  This contention is meritless as explained in section III.E *infra*.

ORDER
PAGE - 4

number did not enter the United States until September 12, 2008, months after Amercare's last sale to NYC-DOC.  Loops sent Amercare a notice of its pending patent application on November 17, 2007.  It did not send Amercare a notice that its patent issued until June 13, 2008, after Amercare's last shipment to NYC-DOC.

In an earlier decision this Court held that Amercare lost, destroyed, or withheld relevant documents regarding its transactions with Chinese entities and ordered that Plaintiffs be given an adverse inference instruction.  (Dkt. #152).  The missing documents include invoices, purchase orders, and e-mails between Amercare and its Chinese or Taiwanese contacts.  In deciding whether there is a genuine dispute of material fact for purposes of summary judgment, the Court must take into account that the jury may infer that the evidence made unavailable by Amercare is unfavorable to it.  The effect of this instruction on this summary judgment motion is discussed in section III.E *infra* as it specifically pertains to Loops's fraud claim.

### III.  MOTIONS TO STRIKE

The parties make various motions to strike.  First, Loops moves to strike the declaration of Mark Hubert.  Mr. Hubert, an attorney, testified in his declaration to various legal conclusions concerning the similarity between the published Loops Flexbrush patent application and the issued patent.  He was not disclosed as an expert, nor would he have been permitted to give expert testimony even if properly disclosed because his testimony, consisting solely of legal conclusions, is not helpful to the trier of fact.  *See* Fed. R. Evid. 702.  Essentially, Mr. Hubert's declaration is additional attorney argument on a pure issue of law.  Additionally, Defendants assert that "Defendants have never intended to call Mark Hubert at trial."  (Dkt. #181 at 9).  Evidence that will not be produced at trial has no bearing on a summary judgment motion.  Accordingly, the motion to strike is granted.

Secondly, the Court grants Loops's motion to strike paragraph 12 of the Klingbiel Declaration and paragraph 54 of the Rappaport Report.  Paragraph 54 consists entirely of legal conclusions that are for the Court to decide.

Third, Loops moves to strike paragraph 19 of Hemming's declaration in which she states that "Jeffrey Hemming was not involved in any material way in the conduct or activities alleged in [this case]." The motion is denied. However, the statement is of course limited to Ms. Hemming's personal knowledge. In other words, as far as Ms. Hemming is aware, Jeffrey Hemming was not involved in the events giving rise to this case.

Defendants make their own motions to strike language and arguments from Plaintiffs' briefing on the grounds that they are irrelevant or prejudicial. For example, Defendants move to strike all reference to "bid rigging" or "collusion" because these allegations are a "red herring" not relevant to this case. Objections based on relevance or prejudice are of no moment on a motion for summary judgment. No jury is reading the parties' briefs. The Court can decide for itself which arguments or evidence are relevant and give each the weight it deserves. Accordingly, Defendants' motions to strike "bid rigging" and "collusion," in reference to the three inch Flexbrush, and use of the word "counterfeit" are denied.

## IV.  DISCUSSION

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). Mere disagreement, or the bald assertion that a genuine issue of material fact exists, does not preclude the use of summary judgment. *See Coverdell v. Dept. of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987). Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson, 477 U.S. at 248.*

**A.  Patent Infringement Damages – Marking**

ORDER
PAGE - 6

Amercare first contends that, as a matter of law, Loops cannot recover patent infringement damages because it failed to mark its products in compliance with the marking provisions of the Patent Act.  The relevant provision of the Patent Act provides:

> Patentees . . .  may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C.A. § 287.

It is undisputed that the Loops Flexbrush itself was never marked with the word "patent" or the abbreviation "pat" together with the patent number.  The parties dispute at great length in their briefs whether such marking would have been impossible or impractical based on the size of the toothbrush and the cost of recreating the molds to mark the toothbrush with intellectual property rights.  However, the Court need not decide the issue.  Even if the "character of the article" makes it impractical to properly mark it, the statute requires that proper markings be fixed "to the package wherein one or more of [the toothbrushes] is contained."  35 U.S.C. § 287.  It is undisputed that Loops did not mark the packaging of its Flexbrush with the patent number until September 2008.  Prior to that, the packaging only stated "patent pending."  Since all of Amercare's importation and sales of its Amerfresh Soft Handle toothbrush occurred on or prior to May 22, 2008, long before the Loops Flexbrush was properly marked, section 287 bars Loops from recovering infringement damages

ORDER
PAGE - 7

unless "the infringer was notified of the infringement and continued to infringe thereafter." *Id.*

It is also undisputed that Loops did not notify Amercare of its infringement prior to the last sale of the Amerfresh toothbrush. Loops did not send Amercare a letter notifying Amercare that its patent had issued until June 2008[3] and did not file this action until July 2008. It is irrelevant to the notice or marking inquiry whether the defendant knew of the patent or knew of his own infringement. *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Accordingly, as a matter of law, Plaintiffs cannot recover infringement damages in this case.

Plaintiffs attempt to avoid this result by arguing that the Loops Flexbrushes imported and sold in the United States after February 26, 2008, when the patent issued, were marked on their packaging only with "patent pending" because they were residual inventory from a manufacturing order placed prior to the issuance of the patent. Thus Loops argues the packaging of these toothbrushes were "properly marked." (Dkt. #170 at 20). This argument is misplaced. It is of no moment, as far as section 287 is concerned, why Plaintiffs failed to properly mark their product. The statute is clear that if neither the product nor packaging is marked with the patent number, no damages are available.

---

[3] It is also doubtful that the June 2008 letter was sufficient to provide actual notice because it did not specifically identify the activity Loops believed to be infringing. *See SRI Int'l, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) (actual notice requirement is satisfied when recipient is informed of the identity of the patent and the activity that is believed to be an infringement).

ORDER
PAGE - 8

**B. Reasonable Royalty Under § 154(d)**

While generally a plaintiff can only recover damages for acts of infringement after the issuance of the patent, 35 U.S.C. § 154(d) provides an exception.  That provision provides that once a patent has issued, the patent includes the right to obtain a reasonable royalty from any person who infringes the patent between the date the patent application was published and the date the patent issued if certain conditions are met.  Those conditions include: (1) the alleged infringer must have actual notice of the published patent application, and (2) the invention as claimed in the patent must be "substantially identical" to the invention as claimed in the published  patent application.  35 U.S.C. § 154(d)(1)-(2).

The Amercare Defendants argue that the invention claimed in the patent application is not substantially identical to the invention claimed in the issued Loops Flexbrush patent.  Loops does not provide any argument or authority that the two sets of claims are substantially identical.  Instead, it simply states in its brief, "Defendants rely solely on an inadmissible expert opinion from counsel for the Defendants.  Because the expert opinion from counsel for Defendants is inadmissible, Defendants have failed to meet their burden of proof as to this cause of action."  (Dkt. #170 at 18).  Although the Court agrees with Plaintiffs that the declaration of Mark Hubert is inadmissible, Plaintiffs' argument fails because it improperly shifts the burden of persuasion to Defendants.  It is Plaintiffs' burden, as the party seeking damages, to prove the claims are substantially identical.

Despite the absence of argument, Plaintiffs have provided both the published patent application and the issued patent for this Court's review, allowing the Court to

ORDER
PAGE - 9

decide the issue.  The term "substantially identical" as used in the statute means that they are substantively the same.  *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998).[4]  This is a question of law.  *Id.* at 1347 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 946, 970-71 (Fed. Cir. 1995) (en banc)).  The court must determine whether "the *scope* of the claims are identical, not merely whether different words are used."  *Id.* at 1346 (emphasis in original).

In this case, no claim in the issued patent is substantially identical to the corresponding claim in the published patent application.  Each independent claim in the issued patent contains at least three limitations that the patent application claims do not.[5]  Indeed the independent claims in the 2006 patent application only vaguely resemble the claims in the 2008 approved patent.  They are far from "substantially identical."  *Compare* Kayser Declaration Ex. 11 *with* Kayser Declaration Ex. 27 (Dkt. #s 172-173).  Accordingly, Plaintiffs cannot recover a reasonable royalty.

## C.  Lanham Act Claim

Next, Loops contends that Defendants violated the Lanham Act by using a false designation of origin, palming off their products as Loops's products.  "Passing off (or

---

[4] The Federal Circuit in *Laitram* was interpreting 35 U.S.C. § 252, which gives a patentee certain rights if an original patent and reissued patent are "substantially identical."  The term "substantially identical" has the same meaning in both sections of the patent act.  *See Pandora Jewelry, LLC v. Chamilia, LLC*, 2008 WL 3307156 (D. Md.).

[5] (1)  that the bristles have "a length substantially the same as the width of the group of bristles on the bottom side"; (2) that the handle includes "a narrowed elongated intermediate smooth continuous portion being composed of the pliable flexible material to be limber in its unstressed condition, and integrally connecting the enlarged head portion and the enlarged handle end portion substantially midway therebetween to facilitate flexing of the toothbrush with one hand of an adult user for stressing the pliable flexible material to rigidify the body for teeth brushing purposes; and (3) "wherein the material of the body [of the handle portion] is sufficiently flexible to enable the manually applied external force to flex the handle portion into a smoothly rounded shape."

ORDER
PAGE - 10

palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).  The elements of a false designation of origin claim are: (1) the defendant used a false designation of origin; (2) in interstate commerce; (3) in connection with goods or services; (4) the false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of the defendant's goods; and (5) the plaintiff has been or is likely to be injured by these acts. *Summit Technology, Inc. v. High-Line Medical Instrument Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996); *see* 15 U.S.C. § 1125(a).

Loops describes the factual basis of its claim as follows:  "In June 2006, unbeknownst to Plaintiffs, Defendants bid on a contract to supply the [NYC-DOC] with Loops Flexbrush toothbrushes.  Plaintiffs did not have notice, did not provide their approval or consent to Amercare to bid on the contract, and did not have any agreement to supply Amercare with Loops Flexbrush toothbrushes to NYC-DOC.  As a result, Amercare bid Loops Flexbrush toothbrushes with the intent to supply the toothbrushes directly."  (Response Brief, Dkt. #170 at 26).[6]

 This is insufficient to support a violation of the Lanham Act.  Crediting Loops's version of the facts, the evidence merely shows that Amercare offered to provide the Loops Flexbrush to NYC-DOC in 2006 when, in fact, it had no ability to do so because Loops had not agreed to allow Amercare to distribute its products.  There is no evidence that Amercare ever provided toothbrushes to NYC-DOC in 2006 falsely designated as Loops Flexbrushes.  Nor is there evidence that NYC-DOC was confused

---

[6] Hemming contends that Amercare had "full knowledge and approval of Loops" to submit its 2006 bid to supply Loops Flexbrush toothbrushes.

ORDER
PAGE - 11

or deceived.  In any case, Amercare did not win the 2006 bid and Loops did not suffer injury caused by Amercare's 2006 bid.

Alternatively, Loops argues that Defendants' "unfair competitive practices" of soliciting samples of Loops Flexbrushes, copying them, and using the copies to bid against Loops, violate the Lanham Act.  (Dkt. #170 at 28).  This is unpersuasive. When Amercare bid on the NYC-DOC contract in 2007, it offered to provide the Amerfresh toothbrush.  The bid documents indicated that Amercare was offering to provide the Amerfresh toothbrush, the toothbrushes were labeled "AmerCare" and the packaging was labeled with "AmerCare."  There is no possibility that NYC-DOC was confused regarding the origin of Amercare's toothbrushes.  While Loops objects to what it characterizes as the "slavish copying" of its Flexbrush, (*id.*), the Lanham Act offers no protection.  As the Supreme Court has stated, "unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Dastar*, 539 U.S. at 33 (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)).

**D.  Unfair Competition Under Common Law**

In its complaint, Loops alleges a claim for "Unfair Competition under Washington Common Law against All Defendants.  (Dkt. #41 at 21).  In describing this claim, the complaint realleges the facts underlying Loops's other claims and then states, "By committing the above described acts, including but not limited to, palming and/or passing off Plaintiff's goods without authorization and false designation of origin, [Defendants] have violated the common law of unfair competition."  (*Id.* at ¶105).  To the extent Loops's unfair competition claim is based on palming off, it fails for the same reason its Lanham Act claim fails.

ORDER
PAGE - 12

Loops argues that its unfair competition claim should not be dismissed because Loops has met the elements for tortious interference with a business expectancy. Loops did not plead a claim for tortious interference with a business expectancy and discovery was not conducted regarding such a claim. It is too late to add the claim now.[7]

Since Loops provides no viable argument why its unfair competition claim should be sustained, summary judgment is granted in favor of Defendants on this claim.

**E. Fraud**

Loops brings a claim for common law fraud. The elements of fraud include: (1) a representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of the falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) plaintiff's consequent damages. *Adams v. King County*, 164 Wash. 2d 640, 662 (2008) (citing *Stiley v. Block*, 130 Wash. 2d 486, 505 (1996)); *Turner v. Enders*, 15 Wash. App. 875, 878 (1976). Each element of fraud must be proved by clear, cogent and convincing evidence. *Stiley*, 130 Wash. 2d at 503.

The fraud claim is based on two separate conversations between Hemming and Kayser. First, Loops claims that Hemming fraudulently induced it to provide samples of its Loops Flexbrush in January 2006. Second, Loops claims that Hemming fraudulently induced it to provide samples in January 2007 when Hemming and Kayser were discussing whether Loops would "give" Amercare its flexible toothbrush contracts. Loops claims that on each occasion Hemming represented that she wanted samples to examine them and show them to potential customers in order to evaluate whether Amercare would order the product from Loops for resale, but her true reason for requesting the samples was to send them to China for copying.

---

[7] Even if tortious interference with a business expectancy were properly pled, the claim fails because Loops cannot show that it had a valid business expectancy. Loops could not expect to be awarded the 2007 NYC-DOC contract unless it placed the lowest bid. *See Broten v. May*, 49 Wash. App. 564, 569 (1987) (a valid business expectancy requires an existing enforceable contract or a relationship between parties contemplating a contract with a reasonable expectancy of fruition).

Hemming's first request for samples does not support a fraud claim because there is no evidence that Hemming's representation regarding her need for samples was false or that she intended in January 2006 to use the samples to copy the Loops Flexbrush.  The evidence shows that Amercare is in the business of providing hygiene items to correctional facilities.  Throughout 2006 Amercare purchased floss from Loops and resold it to correctional facilities.  Amercare submitted a bid in 2006 to the NYC-DOC representing that it wished to supply the NYC-DOC with the Loops Flexbrush.  This evidence is consistent with Hemming's testimony that Amercare wanted to distribute the Loops Flexbrush.  That Hemming sent samples for copying a year later in 2007 does not support an inference that Hemming had the intent to do so in 2006 when she made the representation.  Fraud requires a false statement of existing fact – the statement must be false at the time it is made.  *See, e.g.*, *Stiley*, 130 Wash. 2d at 505-06.  As a matter of law, the evidence is insufficient for a jury to find that Hemming's 2006 representation constituted fraud.

Loops disagrees that Hemming sent samples to China in 2007 and instead contends that she did so in 2006 shortly after requesting samples from Loops the first time.  Hemming testified at her deposition that she sent samples to China in April 2007 after Kayser refused to do business with her.  It is undisputed based on documents and testimony that the molds for the Amerfresh toothbrush were made in May and June 2007.  Loops points to four pieces of evidence to promote its theory that the samples were sent in 2006, but none of them create a genuine dispute of fact.

First, Loops points to an interrogatory response in which Hemming admits that she first met Jack Chow, the man who manufactured the copied Amerfresh toothbrush, at a trade show in China in 2006.  This, however, does not shed any light on when Hemming sent samples of Loops Flexbrushes to Mr. Lai or Mr. Chow.  Second, Loops points to Mr. Kayser's testimony that he attended the same trade show in October 2007, met Mr. Chow, and was informed that Mr. Chow had been manufacturing the Amerfresh toothbrush for over a year.  (Dkt. #7-2 at 9-10).  This is inadmissible hearsay.  Third, Amercare submitted a bid to the NYC-DOC in 2006 to provide the Loops Flexbrush.  Loops argues that since Amercare was not authorized to

distribute the Loops Flexbrush, its bid to provide the toothbrush is evidence that it had already copied it. That inference is unwarranted because it is at least equally plausible that Amercare bid to provide the Loops Flexbrush with the hope that Loops would authorize it to be a distributor.

Fourth, Loops contends that Mr. Lai's deposition testimony creates a factual dispute. Mr. Lai initially testified that he had obtained the samples from Hemming before a 2006 trade show. (Lai Deposition p. 29 lines 1-5, Dkt. #215 at 16). However, upon further examination specifically regarding the date of the trade show, Lai testified that he could not remember whether it was a 2006 or 2007 trade show. (Lai Deposition, pp. 34-35, 97, Dkt. #215 at 33). Considering Mr. Lai's deposition testimony as a whole, Lai's lack of memory is insufficient to create a factual dispute.

Finally, Loops argues that summary judgment should not be granted because the adverse inference instruction Loops would receive at trial creates a dispute of fact. The adverse inference instruction would explain to the jury that missing documents including e-mails, purchase orders, and invoices between Amercare and its Chinese contacts were lost, withheld, or destroyed by Amercare and the jury may infer that the evidence made unavailable by Amercare would have been unfavorable to it. An adverse inference instruction, "standing alone, is not enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). However, "at the margin, where the innocent party has produced some (not insubstantial) evidence in support of its claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line." *Id.*; *see also Ritchie v. United States*, 451 F.3d 1019, 1025 (9th Cir. 2006) (citing *Kronisch* and expressly adopting the Second Circuit's "careful and balanced approach" to weighing the probative value of destroyed documents). Here, the evidence that Hemming sent samples to China in 2006 is "utterly inadequate." *Kronisch*, 150 F.4d at 128. Loops may not use the adverse inference instruction as a wild card to create a factual dispute where none exists.

ORDER
PAGE - 15

Hemming's January 2007 request for samples of the Loops Flexbrush also does not support a fraud claim because the ninth element is lacking. Loops must prove "consequent damages," which requires that its claimed damages be caused by the fraud. Hemming's fraudulent representations in January 2007 caused Loops to provide samples to Amercare. But Loops does not seek to recover the de minimis value of the samples; it seeks damages incurred from the copying of its product and the loss of the NYC-DOC contract. Thus, Loops has the burden of proving that but for the fraudulent statements, Amercare would not have copied the Flexbrush. This means Loops must prove that Amercare could not have obtained the Loops Flexbrush from some other means.

Loops has produced no evidence to meet this burden. The Loops Flexbrush was for sale in 2006 and 2007. It is likely that Amercare could have purchased a Flexbrush from one of Loops's distributors. It is also likely that Amercare could have obtained a sample from NYC-DOC in early 2007 since NYC-DOC was requesting bids for a Loops Flexbrush or equal. Loops provides no evidence to the contrary.

More to the point, in 2007 when the fraudulent statements were made, Amercare already possessed samples of the Flexbrush which it had obtained in 2006. Thus Amercare could have copied the Flexbrush regardless of the 2007 statements. Since causation is lacking, summary judgment must be granted.

**F. Washington Consumer Protection Act Claim**

Washington's Consumer Protection Act ("CPA") provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The five elements of a CPA action are: (1) an unfair or deceptive act or practice; (2) in the conduct of trade or commerce; (3) which impacts the public interest; (4) injury to the plaintiffs in their business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Mason v. Mortgage America, Inc.*, 114 Wash 2d 842, 852 (1990) (citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash 2d 778, 719 (1986)).

ORDER
PAGE - 16

Loops argues that Defendants engaged in two unfair or deceptive acts or practices: first "Ms. Hemming solicited Plaintiffs on three separate occasions to engage in acts to deceive the public by demanding that Plaintiffs give Amercare Plaintiffs' contracts and/or bids for the sale of flexible handle toothbrushes;" second, "Ms. Hemming concealed her intentions to copy Plaintiffs' toothbrushes in China."  (Dkt. #170 at 30).[8]

As to the first allegedly deceptive act, Loops contends that Hemming attempted to engage Loops in "bid rigging" and "collusion."  These allegations are beyond the scope of this case.  The complaint does not allege that Defendants engaged in bid rigging or collusion or that they violated any state competitive bidding statutes.  Rather, it merely states that "Hemming requested that [Loops] give Amercare any and all contracts [Loops] had for the sale of these products to allow Amercare to manage these contracts with [Loops] supplying the product to Amercare.  On behalf of [Loops], Kayser refused Hemming's request."  (Dkt. #41 at ¶¶ 38, 41).  Loops provides no legal or evidentiary support that bid rigging occurred or was attempted.  Even if Amercare had attempted to collude with Loops to do something illegal, Loops refused any invitation and suffered no injury caused by any invitation.

Turning to the second act, Loops contends that Defendants committed an unfair or deceptive act when Hemming failed to reveal her intention to copy the Loops Flexbrush. Defendants argue that the claim must be dismissed because Loops cannot show that the deceptive act impacted the public interest, the third element of a CPA claim.

Whether a particular act impacts the public interest is determined by analyzing a variety of factors that differ depending on whether the transaction was "essentially a consumer transaction" or "essentially a private dispute."  *Hangman Ridge*, 105 Wash. 2d at 790.  The present dispute arises from a private contract negotiation, not from a business-consumer relationship and is therefore a private dispute.  *See Sign-O-Lite Signs, Inc. v. DeLaurenti*

---

[8] Loops's CPA claim cannot rest on Defendants' act of copying the Loops Flexbrush because such a claim would be preempted by federal patent and copyright laws.  *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989); *Summit Machine Tool Mfg. Corp. v. Victorc CNC Sys., Inc.*, 7 F.3d 1434, 1439 (1993).  Nor can the claim rest on a theory of palming off because no palming off occurred as explained above.

ORDER
PAGE - 17

*Florists, Inc.*, 64 Wash. App. 553, 562 (1992) (dispute arising from contract to purchase a sign characterized as a private dispute);  *Broten v. May*, 49 Wash. App. 564, 570 (1987) (dispute between competitors was essentially private); *see also Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 742 (1987) (consumer dispute cases typically involve disputes between a purchaser of goods and a seller or between an individual paying for services and the party rendering them).

Where a dispute is "essentially private," "it may be more difficult to show that the public has an interest in the subject matter.  *Michael v. Mosquera-Lacy*, 165 Wash. 2d 595, 605 (2009) (*quoting Hangman Ridge*, 105 Wash. 2d at 791).  "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interst."  *Hangman Ridge*, 105 Wash. 2d at 791.  "It is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest."  *Michael*, 165 Wash. 2d at 605 (quoting *Hangman Ridge*, 105 Wash. 2d at 790).  "There must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated."  *Id.* (quoting *Eastlake Constr. Co. v. Hess*, 102 Wash. 2d 30, 52 (1984)).  The Court evaluates four factors: (1) whether the alleged acts were committed in the course of defendant's business; (2) whether the defendant advertised to the public in general; (3) whether the defendant actively solicited this particular plaintiff, indicating potential solicitation of others; and (4) whether the plaintiff and defendant have unequal bargaining positions.  *Hangman Ridge*, 105 Wash. 2d at 790.  These factors are not exclusive, no one factor is dispositive, nor is it necessary that all be present.  *Id.* at 791.

Here, Hemming's failure to reveal her intention to copy the Loops Flexbrush occurred in the course of Amercare's business dealings.  It is equally clear that Amercare does not advertise to the public in general.  As to the third factor, viewing the evidence in the light most favorable to Plaintiffs, Amercare solicited Loops' business in January 2006 when Hemming telephoned Kayser requesting price quotations and samples for Loops's products.  Hemming also solicited Kayser in 2007, asking him to "give" Loops's contracts to Amercare.  However,

ORDER
PAGE - 18

it matters little who initiated contract negotiations.  The focus of the third factor is whether

there is "a real and substantial potential" that the alleged deceptive act will be repeated,

causing additional plaintiffs to be "injured in exactly the same fashion."  *Michael*, 165 Wash.

2d at 605.  That is not the case here.  The deceptive act occurred in the course of a year-long

business relationship between the parties.  There is no evidence that Amercare solicited sample

products from others intending to copy the samples.  No rational jury could conclude that this

was other than an isolated incident.  *Cf. Sign-O-Lite Signs*, 64 Wash. App. at 562-63 (where

defendant routinely made door-to-door "cold calls" to customers and deceived one customer by

lying regarding the contents of a form contract, evidence was sufficient to support jury's

finding that the public interest was implicated because defendant's "style of soliciting

business" indicated potential for a substantial portion of the public to be deceived).

Loops argues that the fourth factor weighs in its favor because "Defendants are one of

the largest suppliers of dental hygiene products nationwide to correctional institutions . . .

while Plaintiffs offer only [two] niche products . . . ."  (Dkt. #170 at 31).  On the other hand,

Loops is the sole source of the Loops Flexbrush.  Amercare could not distribute the Loops

Flexbrush without Loops's permission.  Additionally, once Loops's patent issued, Amercare

would not only be prevented from distributing the Loops Flexbrush without Loops's

permission, it could be enjoined from distributing any infringing product.  Thus, Loops's

bargaining power was substantial.  In addition, it is worth noting that Loops refused

Amercare's contract offers, evidencing that it was not at in a substantially inferior position.

Accordingly, the fourth factor is neutral or perhaps weighs against Loops.  Since only the first

factor weighs in favor of Loops, the public interest is not implicated in this case.[9]

---

[9] While the public interest inquiry is often fact specific and the fact finder is given latitude to weigh the factors, whether particular conduct gives rise to a CPA violation is a question of law.  *Sing v. Scott*, 134 Wash. 2d 24, 30 (1997).  Washington courts regularly decide that the public interest element is lacking as a matter of law in private dispute cases even where one or more factors weigh in favor of public interest.  *See Michael*, 165 Wash. 2d at 605; *Hangman Ridge*, 105 Wash. 2d at 794; *Broten*, 49 Wash. App. at 570-71.  The factors are merely rough "indicia" of effect on the public interest.  *Hangman Ridge*, 105 Wash. 2d at 791.

ORDER
PAGE - 19

Loops also argues that the Court can find that the public interest element is satisfied "per se" because Amercare's conduct constitutes bid rigging in violation of RCW 9.18.120 *et seq.* However, Loops does not point to any "specific legislative declaration" of a public interest. *See Hangman Ridge*, 105 Wash. 2d at 791 ("Unless there is a specific legislative declaration of a public interest, the public interest requirement is not per se satisfied") (internal quotation omitted). Additionally, as stated above, there is no proof that bid rigging occurred and such claims are outside the scope of this litigation.

At base, this case involves a deceptive nondisclosure during contract negotiations between two private companies. The public interest is not implicated. Loops's CPA claim thus fails as a matter of law. [10]

## G. Defendant Jeffrey Hemming

The only remaining claim against the Amercare Defendants is patent infringement for which only non-monetary remedies are available. There is no evidence that Defendant Jeffrey Hemming participated in infringing Loops's patents. Indeed, although Jeffrey Hemming is apparently an employee of Amercare, the Court has heard no evidence that he was involved in any of the complained of actions in this suit. Accordingly, this remaining claim is dismissed as to Defendant Jeffrey Hemming.

## V.  CONCLUSION

Defendants' motion for partial summary judgment is GRANTED. Plaintiffs' claims for violation of the Lanham Act, fraud, unfair competition, and violation of the Washington CPA are DISMISSED as to the Amercare Defendants. Additionally, Plaintiffs may not recover monetary damages on their claim for patent infringement. Furthermore, all claims against Jeffrey Hemming are dismissed. The only remaining claim with respect to Defendants

---

[10] Although Defendants do not raise the argument, it is apparent that Loops's CPA claim also fails for the same reason its fraud claim fails. There is no causal link between Hemming's concealment of her intent to copy the Loops Flexbrush and the harm suffered.

ORDER
PAGE - 20

Amercare and Wendy Hemming is a claim for patent infringement for which only non-monetary relief is available.

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendants Amercare, Wendy Hemming, and Jeffrey Hemming's Motion for Summary Judgment (Dkt. #153) is GRANTED as described above.

(2)  The Clerk is directed to terminate Jeffrey Hemming from the docket as all claims against him are dismissed.

(3)  Plaintiff's remaining claim against Amercare and Wendy Hemming is a claim for patent infringement for which only non-monetary relief is available.

(4)  The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 30th day of July 2010.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 21