UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOOPS LLC, a Delaware limited liability corporation, LOOPS FLEXBRUSH LLC, a Delaware limited liability corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PHOENIX TRADING, INC. dba AMERCARE PRODUCTS, INC., a Washington corporation, et al.,<br><br>Defendants. | CASE NO. C08-1064 RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART H&L INDUSTRIAL'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant H&L Industrial's Motion for Summary Judgment (Dkt. #141). The Court DENIES the motion with respect to Plaintiffs' (collectively "Loops") patent infringement claim and GRANTS the motion with respect to all other claims.

**I.  BACKGROUND**

The parties are familiar with the factual background and procedural history of this case. Additionally, the Court recounted the facts with respect to Defendant Amercare Products, Inc.'s

1  ("Amercare") involvement in this case in the Court's July 30, 2010 Order (Dkt. #233).  Thus the

2  Court briefly states here only those additional facts necessary to understand its disposition.

3        H&L Industrial is Amercare's manufacturer's representative, located in China.  H&L

4  Industrial manufactures foam used for toys, but does not manufacture any other products itself.

5  Rather, it acts as a broker; when Amercare seeks to import a certain product into the United

6  States,  it contacts Mr. Lai at H&L Industrial whose job it is to locate a factory that can produce

7  that product.  H&L Industrial coordinates obtaining the product from a manufacturer, inspecting

8  the product, and arranging with Chinese export agencies to have the product shipped.  Typically

9  Amercare pays H&L a lump sum of money; H&L uses that money to pay the manufacturer and

10  other costs and keeps a 15 to 30 percent commission.

11        Sometime in the late spring of 2007, Defendant Wendy Hemming, president of

12  Amercare, sent a sample of the Loops Flexbrush to Mr. Lai.  After Mr. Lai contacted Ms.

13  Hemming and ascertained that Ms. Hemming wished him to find a factory to manufacture a copy

14  of that toothbrush, Mr. Lai found such a factory in Jiangsu Light.  Molds were created in May

15  and June 2007.  Amercare placed orders with H&L Industrial and H&L passed the orders along

16  to the manufacturer.  After receiving the manufactured toothbrushes along with many other

17  products manufactured for Amercare, H&L organized with an export company to have the

18  products consolidated into containers and eventually shipped out of China to the United States.

19  Shipments were made to Amercare starting around October 2007 and continuing until May 2008.

20  There are no written contracts between Amercare and H&L Industrial or between H&L

21  Industrial and Jiangsu Light.

22        A patent on the Loops Flexbrush issued on February 26, 2008.  At least one shipment to

23  Amercare occurred after the issuance of the patent.

24

ORDER GRANTING IN PART AND DENYING IN PART H&L INDUSTRIAL'S MOTION FOR SUMMARY
JUDGMENT - 2

| | |
|---|---|
| 1 | ## II.  SUMMARY JUDGMENT STANDARD |
| 2 | Summary judgment is appropriate where "the pleadings, the discovery and disclosure |
| 3 | materials on file, and any affidavits show that there is no genuine issue as to any material fact |
| 4 | and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); *Anderson v.* |
| 5 | *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences |
| 6 | in favor of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 |
| 7 | (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994).  In ruling on summary judgment, |
| 8 | a court does not weigh evidence to determine the truth of the matter, but "only determine[s] |
| 9 | whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. |
| 10 | 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747).  Material facts are those which might |
| 11 | affect the outcome of the suit under governing law.  *Anderson, 477 U.S. at 248*. |

## III.  DISCUSSION

**A.  Non-Patent Claims**

Much of the Court's analysis from its July 30, 2010 Order granting Amercare's motion for partial summary judgment is applicable to the instant motion.  In that order, the Court concluded that there was no evidence that Amercare or the individual defendants violated the Lanham Act because there was no evidence of palming off or reverse palming off.  (Dkt. #233 at 11).  For the same reasons, there is also no evidence from which a jury could conclude that H&L violated the Lanham Act.  Accordingly, summary judgment is granted in favor of H&L on this claim.  Because Loops' claims for unfair competition and violations of the Washington Consumer Protection Act are predicated on a palming off theory, summary judgment is granted on these claims for the same reason. There is no evidence of palming off.

**B.  Patent Infringement**

The Court now turns to Loops' claim for patent infringement.  The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent."  35 U.S.C. § 271(a).

Loops first argues that H&L Industrial violated the statute by manufacturing an infringing toothbrush.  This argument is factually tenuous, but the Court need not decide whether there is a dispute of fact because any such dispute would be immaterial.  It is undisputed that whoever manufactured the infringing toothbrushes did so in China, which is not "within the United States." *Id.*

Loops' argument that H&L Industrial sold infringing toothbrushes within the United States requires a more thorough analysis.  The law regarding where a sale takes place for purposes of section 271(a) is somewhat unsettled, but the Court is guided by a few Federal Circuit decisions.

In *North American Philips Corp. v. American Vending Sales, Inc.,*, the Federal Circuit was tasked with determining the situs of a sale of an infringing product for purposes of personal jurisdiction.  35 F.3d 1576 (Fed. Cir. 1994).  The Court explained:

> The difficulty in answering this question is that unlike the "making" and the "using" of an infringing article, which as purely physical occurrences are relatively straightforward to place, the "selling" of an infringing article has both a physical and a conceptual dimension to it.  That is to say, it is possible to define the situs of the tort of infringement-by-sale either in real terms as including the location of the seller and the buyer and perhaps the points along the shipment route in between, or in formal terms as a single point at which some legally operative act took place, such as the place where the sales transaction would be deemed to have occurred as a matter of commercial law.

*Id.* at 1579.  The court went on to conclude: "We hold that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there)."  *Id.*  The court

1  rejected the defendants' arguments that because goods were delivered "free on board"[1]

2  ("f.o.b.") in Texas and California, the sales took place in those states. *Id.* The court explained

3  that even if it were to use a "mechanical test," the defendants "failed to explain why the

4  criterion should be the place where legal title passes rather than the more familiar places of

5  contracting and performance." *Id.*

6  Recently, in *Litecubes, LLC v. Northern Light Products, Inc.*, the Federal Circuit held

7  that its earlier precedent regarding the location of a sale for purposes of personal jurisdiction is

8  equally applicable to the location of a sale for purposes of section 271(a). 523 F.3d 1353,

9  1370 (Fed. Cir. 2008) ("[W]e see no basis for construing the location of a 'sale' differently

10  when the issue is whether the plaintiff has established that the sale took place within the

11  United States for the purposes of infringement."). The court held that a Canadian company

12  that sold products to United States customers made a sale within the United States even though

13  the goods were delivered f.o.b. in Canada because (1) the products were sold directly to

14  customers in the United States, (2) the customers were in the United States when they

15  contracted for the product, and (3) the products were delivered directly to the United States.

16  *Id.* at 1371.

17  Finally, just this year the court upheld on fundamental error review a jury instruction

18  that in determining whether a sale occurred within the United States, the jury could consider

19  "where the products were shipped from and where the products were shipped to." *SEB S.A. v.*

20  *Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010). The jury was instructed

21  that it could consider the f.o.b. terms, but that they were not dispositive. *Id.* Since the record

---

[1] "Free on board" is a method of shipment whereby goods are delivered at a designated location, usually a transportation depot, where legal title and thus the risk of loss passes from seller to buyer. *Id.* at 1578 n. 2.

1  showed the infringer intended to sell the infringing product directly into the United States and
2  invoices indicated delivery to United States destinations, the jury's infringement verdict was
3  supported. *Id.*

4  In the matter at hand, H&L Industrial contends that it did not make a sale as a matter of
5  law because it never held title to the toothbrushes, and even if it did make a sale, the sale
6  occurred entirely in China because the goods were tendered to an export agency in China.
7  (Dkt. #220 at 10).  The Court rejects each of these arguments.

8  First, there is a dispute of fact regarding whether H&L made a sale.  All contracts
9  between H&L and its various business partners were oral, leaving a factual question as to who
10 held title to the toothbrushes at various times.  Additionally, Mr. Lai characterizes his conduct
11 as having sold toothbrushes.  (Lai Deposition at 22:2-3) ("The toothbrush I sold to American
12 clients.  That's what we are going to talk about today, right?").  Moreover, Amercare conducted
13 all its negotiations with H&L and paid H&L directly and exclusively.  Thus, a jury could
14 conclude that H&L made a sale.

15 Second, the evidence supports a finding that the sale, if made, was made "within the
16 United States."  As in *Litecubes*, the products here were sold directly to the buyer in the United
17 States; the buyer was in the United States when the contract to purchase was made; and the
18 goods were shipped directly to the buyer in the United States. *Litecubes*, 523 F.3d at 1371; *cf.*
19 *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376-
20 77 (Fed. Cir. 2005) (no sale "within the United States" where defendant in Japan sold
21 infringing product to another Japanese company, which then resold it to its subsidiary in the
22 United States); *Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.*, 130 F. Supp. 2d 1152,
23 1167 (C.D. Cal. 2001) (no sale "within the United States" where buyer and seller were both in
24

Hong Kong). Accordingly, the motion for summary judgment is denied with respect to the patent infringement claim.[2]

### C. Marking

In the Court's July 30, 2010 Order, the Court held that Loops is unable to recover monetary damages because it failed to comply with the marking statute, 35 U.S.C. § 287. (Dkt. #233 at 7-10). There is no evidence that Loops provided actual notice of infringement to H&L. Thus while Loops' patent infringement claim against H&L Industrial survives summary judgment, only monetary damages are available as a matter of law.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) H&L Industrial's Motion for Summary Judgment (Dkt #141) is GRANTED IN PART AND DENIED IN PART as analyzed above. Only one claim against H&L Industrial remains: the claim for patent infringement for which only nonmonetary relief is available.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated August 23, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[2] The Court does not address whether H&L Industrial made an offer to sell within the United States and Loops did not argue that H&L Industrial imported infringing product into the United States.