1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

LOOPS LLC, a Delaware limited liability
company, LOOPS FLEXBRUSH LLC, a
Delaware limited liability company,

                      Plaintiffs,

     v.

PHOENIX TRADING, INC., dba
AMERICARE PRODUCTS, INC., a
Washington corporation; WENDY
HEMMING, an individual; JEFFREY R.
HEMMING, and individual; H&L
INDUSTRIAL, a business of unknown
formation; and DOES 1 through 50,
inclusive,

                     Defendant.

CASE NO. C08-1064-RSM

ORDER GRANTING PLAINTIFFS'
RULE 37 MOTION TO STRIKE
ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT
MONETARY SANCTIONS

19

20

21

22

23

24

# I. INTRODUCTION

      This matter comes before the Court upon Plaintiffs' Rule 37 Motion to Strike Answer;

Enter Default Judgment; and Grant Monetary Sanctions (Dkt. #261).  For the reasons stated

below, Plaintiffs' motion is GRANTED.

# II. BACKGROUND

## A. The Underlying Lawsuit

Plaintiffs Loops, LLC and Loops Flexbrush, LLC (collectively "Loops") allege in this action that Amercare fraudulently obtained a sample of the patented Loops Flexbrush, sent the sample to China to be copied, and sold the infringing copies at a low price, outbidding Loops on a supply contract. Loops brings claims for patent infringement, violations of the Lanham Act, unfair competition under Washington common law, violations of the Washington Consumer Protection Act, and fraud.

Steven Kayser is the inventor of the Loops Flexbrush, a small flexible handle toothbrush designed for safe use in prisons. The Flexbrush comes in 4.25 inch and 3 inch sizes. It is made of flexible material, allowing the toothbrush to be bent in half or twisted into a spiral without breaking. The Flexbrush is well-suited for use in correctional facilities because its soft handle cannot be fashioned into a weapon, known in the vernacular as a shank. Kayser is the founder of Plaintiffs Loops LLC and Loops Flexbrush LLC and has assigned his relevant intellectual property rights to those companies. Loops also sells prison-safe dental floss.

Amercare is a Washington corporation that imports a wide variety of health and toiletry items such as toothbrushes, shampoo, and soap, and resells them to customers, including prisons. Defendant Wendy Hemming ("Hemming") is the majority shareholder and president of Amercare. Her husband, Defendant Jeffrey Hemming, was at various times relevant to this lawsuit a minority shareholder, officer, and employee of Amercare. H&L Industrial is Amercare's manufacturer's representative, located in China.

1    H&L Industrial manufactures foam used for toys, but does not manufacture any other

2    products itself.  Rather, it acts as a broker; when Amercare seeks to import a certain product into

3    the United States, it contacts Mr. Lai at H&L Industrial whose job it is to locate a factory that

4    can produce that product.  H&L Industrial coordinates obtaining the product from a

5    manufacturer, inspecting the product, and arranging with Chinese export agencies to have the

6    product shipped.  Typically Amercare pays H&L a lump sum of money; H&L uses that money to

7    pay the manufacturer and other costs and keeps a 15 to 30 percent commission.

8    On January 13, 2006, Ms. Hemming telephoned Kayser requesting that Loops provide

9    her with price quotations for Loops's dental floss for one of Amercare's clients.  She also

10   requested that Loops provide her with samples of all its products, including the Loops Flexbrush.

11   Loops sent samples of its 4.25 inch toothbrush in the colors blue and white.

12   Approximately two weeks later, Hemming contacted Loops to order dental floss to

13   distribute to her customers.  During the next year, she continued to order floss periodically,

14   placing six orders with Loops between January 26, 2006 and January 23, 2007.

15   In May 2006, Amercare placed a bid with the New York City Department of Corrections

16   ("NYC-DOC") to supply Loops Flexbrush toothbrushes.  The bid sheet Amercare submitted

17   stated that Amercare was the bidder and that it was offering to supply "Loops Flexbrush."  Loops

18   was not aware that Amercare submitted this bid, nor had Loops agreed to sell Amercare its

19   Loops Flexbrush or allow Amercare to distribute it.  Amercare did not win its 2006 bid and

20   consequently never sold any Loops Flexbrushes to NYC-DOC.  Between August 2006 and June

21   2007, NYC-DOC purchased Loops Flexbrushes from Loops.

22   On January 23, 2007, Hemming and Kayser had another telephone conversation.

23   Hemming informed Kayser that she wished to sell the Loops Flexbrush and she would like

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 3

Loops to "give" all of its flexible handle toothbrush contracts, including its NYC-DOC contract, to Amercare so that Amercare could be a reseller or distributor of the Loops Flexbrush.  Kayser believed that to allow Amercare to be a reseller would constitute "bid rigging" or "collusion" and refused.  Hemming requested that Loops provide additional samples of the Loops Flexbrush.  On January 26, 2007, Kayser and Hemming met in person at Amercare's offices.  Hemming again requested that Loops allow Amercare to service its contracts and resell its Flexbrush, and Kayser again refused.  In February 2007, Loops sent Amercare additional samples of its Flexbrush toothbrush in response to Amercare's earlier request.

Sometime in the early months of 2007, NYC Department of Administrative Services decided to put the NYC-DOC toothbrush contract up for bid.  Loops provided product specification sheets, information regarding the material composition of its toothbrushes, and samples of its Flexbrush to NYC-DOC.  NYC-DOC published bid documents seeking a "Loops Flexbrush # FBM 02 or equal" for the period August 30, 2007 to November 29, 2010.

On April 23, 2007, Hemming made one last attempt to convince Kayser to allow Amercare to service Loops's contracts.  Hemming admits that before the meeting began, she intended that if the negotiation failed, she would send the samples of the Loops Flexbrush to China to have them copied and would use those copies to bid against Loops for the NYC-DOC contract.  She did not reveal this intention to Kayser.  Kayser did refuse Hemming's offer, and Hemming carried out her plan.  Immediately following that conversation, Hemming sent samples of the Loops Flexbrush to Mr. Lai in Taiwan to have them copied by a Chinese manufacturer.

Hemming was familiar with the price Loops would charge Amercare for Flexbrushes and intended to bid lower than that amount to beat Loops's bid.  According to Hemming, the Flexbrush sample she sent to China was blue, meaning that it was from the batch of samples

1    provided in 2006.  Molds for manufacturing the copied toothbrushes were ordered in May and

2    June 2007.

3            On April 24, 2007, Amercare submitted a bid to NYC-DOC.  The bid document stated

4    that Amercare was willing to provide the "Amerfresh Soft Handle = Equal to Loops FBM02"

5    made by "Amercare Products, Inc."  The Amerfresh Soft Handle, manufactured in China, is an

6    identical copy of the blue Loops Flexbrush in every respect except one.  Whereas the words

7    "LoopS™ Flexbrush™" are embossed in raised lettering on the back side of the head of the

8    Loops Flexbrush (opposite the bristles), the name "<u>AmerCare</u>" is embossed on the Amerfresh

9    toothbrush in the same place and in the same font.

10           Having the lowest bid, Amercare won the contract to provide flexible toothbrushes to

11   NYC-DOC.  Amercare's bid was more than 60% lower than Loops's bid.  There were no other

12   qualified bidders.  Amercare provided NYC-DOC with Amerfresh Soft Handle toothbrushes

13   from October 31, 2007 to May 22, 2008.

14           Loops submitted its patent application for the Loops Flexbrush in August 2004.  The

15   patent, number 7,334,286 B2 ("286 patent") did not issue until February 26, 2008.  The Loops

16   Flexbrush does not have, and never has had, any markings on the toothbrush itself indicating that

17   it is patented or that a patent is pending.  At all times prior to September 2008, the disposable

18   plastic packaging on each individual Flexbrush, including the samples given to Amercare,

19   indicated "patent pending."  Flexbrushes with packaging listing the product's patent number did

20   not enter the United States until September 12, 2008.  Loops sent Amercare a notice of its

21   pending patent application on November 17, 2007.  It did not send Amercare a notice that its

22   patent issued until June 13, 2008.

23

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 5

**B. Procedural History**

On February 3, 2009, Plaintiffs served Requests for Production of Documents, Set One. Dkt. #261, Ex. A.  The requested documents included all product catalogs and lists for the period of 1/1/06 to the present including paper, web-based or internet product catalogs (RFP#37); all documents related to the sale of soft or flexible handle toothbrushes of approximately 4.25 inches including offers for sale (RFP#24); all documents related to the sale of soft or flexible handle toothbrushes of approximately 4.0-5.0 inches in length, including offers for sale (RFP#25); all documents related to the sale of soft or flexible handle toothbrushes of approximately 3 inches in length, including offers for sale (RFP#26); and all documents related to the sale of soft or flexible handle toothbrushes of approximately 6 inches in length, including offers for sale (RFP#27).  In response to these requests, Defendants produced documents on four occasions.  One production included a product catalog, which did not include a flexible handle toothbrush. Dkt. #261, Ex. B.  Defendants did not produce any price lists.

On August 5, 2009, Plaintiffs filed a Motion to Compel Discovery.  Dkt. #59.  In ruling on the Motion to Compel, the Court made the following Order:

> [A]ll documents that relate to soft-handled toothbrushes are relevant and must be produced if responsive to a request.  It is unclear from the record whether Defendants have ever sold a soft-handled toothbrush other than the Amerfresh Soft Handle toothbrush.  To be clear, if they have, those soft-handled toothbrush sales are relevant to this case and are reasonably calculated to lead the discovery of admissible evidence.

Dkt. #69.  The Court also held that the particular designation used by Defendants for flexible handle toothbrushes was irrelevant for the purpose of producing documents:

> All flexible handle toothbrushes manufactured or shipped by Defendants are relevant to this case, regardless of the product number used to refer to them. Thus Defendants should not limit their discovery responses to one product number if there are others relating to flexible toothbrushes.

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT JUDGMENT; AND GRANT MONETARY SANCTIONS - 6

1     *Id.*  The Court ordered that "[a]ll requests for documents that are constrained to matters

2 relating to flexible handle toothbrushes are proper requests with which Defendants must

3 comply."

4     On November 3, 2009, Plaintiffs took the deposition of Ms. Hemming.  During this

5 deposition, Plaintiffs marked an exhibit that they had independently discovered through a

6 Freedom of Information Act request.  The exhibit was an Amercare product price list, which did

7 not contain any flexible toothbrushes and did not contain a toothbrush denominated "TB-FLX".

8 Dkt. #262, Ex. C.  Ms. Hemming testified that the marked product list was her current price sheet

9 and that she had not changed her price sheet for years.  *Id.,* Ex. D at 31:15-20.

10     On March 3, 2010, the Court granted Plaintiffs' Motion for Contempt of Court Sanctions

11 based on evidence that Amercare had lost, destroyed, or withheld relevant documents regarding

12 its transactions with Chinese entities that were relevant to damages and liability. Dkt. #152.  In

13 doing so, the Court made the following findings:

14         Defendants had four or five invoices from Kai Yuen/ Jiangsu Light within their
         possession or control during the pendency of this litigation. They only produced
15         two of them. Defendants were also in control of purchase orders for flexible
         handle toothbrushes sent from Amercare to H&L Industrial, and invoices from
16         H&L to Amercare, which were not produced. Additionally, Defendants were in
         control of invoices detailing freight charges for transportation of flexible
17         toothbrushes from factories in China to Chinese ports as well as wire transfers
         from Amercare to H&L Industrial, and these have not been produced. The Court
18         finds that Defendants are culpable in either withholding these documents or
         negligently destroying or losing them after having a duty to preserve them. The
19         Court further finds that these materials were relevant to prove the extent of
         Defendants' damages. Finally, the Court finds that some number of e-mails
20         between Amercare and H&L existed during the pendency of this lawsuit which
         were not produced and have since been negligently deleted. These e-mails were
21         likely relevant to damages and liability. Defendants' contention that no
         documents have been destroyed and no more responsive documents exist is
22         directly contradicted by Ms. Hemming's deposition testimony, which indicates
         that relevant documents do or did exist.

23

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 7

1    *Id.* at 7.  Having made these findings, the Court entered an adverse inference instruction against

2    Defendants.  *Id.*

3          In its July 30, 2010 Order on Summary Judgment, this Court determined that

4    Amercare's last shipment to NYC-DOC occurred before Loops sent Amercare notice on June

5    13, 2008 that its patent on the Flexbrush had issued.  Dkt. #233.  The Court also found that

6    Flexbrushes with packaging listing the product's patent number did not enter the United States

7    until September 12, 2008, months after Amercare's last sale to NYC-DOC.  *Id.*  As a result,

8    this Court held that Loops was not entitled to any monetary damages from Amercare or

9    Hemming.  *Id.* at 7 ("Since all of Amercare's importation and sales of its Amerfresh Soft

10   Handle toothbrush occurred on or prior to May 22, 2008, long before the Loops Flexbrush was

11   properly marked, section 287 bars Loops from recovering infringement damages.").  The Court

12   reached this conclusion based on the evidence before it.  Its decision was specifically

13   predicated on the finding that Amercare had not sold any soft handle toothbrushes after May

14   22, 2008.  Shortly thereafter, based on the same understanding regarding the date of the last

15   shipment of Amercare soft handle brushes and the date upon which Amercare was made aware

16   of Loops' issued patent, the Court dismissed plaintiffs' claims for monetary damages against

17   H&L Industrial as well.  Dkt. #236.

18         The discovery cutoff in this case was February 16, 2010.  Nonetheless, Plaintiffs

19   continued to seek evidence of Defendants having sold soft handled toothbrushes after the date

20   upon which they became aware that a patent had issued to Loops.  Accordingly, Plaintiffs sent

21   Freedom of Information Acts to various correctional institutions.  The basis of this motion is

22   evidence gathered through one such request.

23

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 8

**C.  The Newly Discovered Evidence**

1

2        In August, 2010, Plaintiffs sent a Freedom of Information Act request for documents to

3  the State of West Virginia.  The request sought vendor catalogs of Amercare products.  Shortly

4  thereafter, the State of West Virginia sent Loops Flexbrush, LLC responsive documents.  The

5  documents revealed that in December, 2009, Defendants provided a Response to a Request for

6  Quotation to the State of West Virginia. The response was personally signed by Wendy

7  Hemming and notarized by Julie Siegel.  Dkt. #262, Ex. F.   It contained two price lists, each

8  including a toothbrush, designated by "TB-FLX," called the "Better Than No-Shank Flexible

9  Toothbrush."   The TB-FLX brushes were offered for sale for 75 cents each.  The price sheet was

10  never produced in discovery, yet the lists themselves contained the marking, "effective date

11  07/07/07".  Plaintiffs argue that the price sheets show that Defendants have suppressed material

12  evidence throughout the litigation, have filed false declarations based on the suppressed

13  evidence, have successfully been granted summary judgment based on the false declarations, and

14  are seeking attorneys fees based on the false records in this action.  Plaintiffs request the Court

15  strike the pleadings of Defendants, including Defendants' answer and affirmative defenses, and

16  enter judgment in favor of Plaintiffs.

17

18                              **III. DISCUSSION**

19        Plaintiffs believe that the TB-FLX toothbrush is a flexible handled toothbrush.  If this is

20  true, it may prove that Defendants offered for sale an infringing toothbrush *after* receiving notice

21  from Plaintiffs that a patent had issued on the Loops Flexbrush.  To support their argument that

22  the TB-FLX is a flexible handled toothbrush, Plaintiffs point (1) to the code used to refer to the

23  toothbrush: TB-FLX, or "toothbrush flexible"; (2) the name used to refer to the toothbrush:

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 9

1   "Better Than No-Shank Flexible Toothbrush"; and (3) the price of the toothbrush: 75 cents.  The

2   75 cent price suggests that the toothbrush is a flexible toothbrush because Wendy Hemming

3   claimed that flexible toothbrushes cost approximately 80 cents.  In a declaration submitted by

4   Ms. Hemming in connection with Plaintiffs' 2009 Motion to Compel, she explained the

5   prohibitive price-point of flexible toothbrushes:

6       Because the sale price for the Amerfresh Soft Handle Toothbrush (and, almost
        certainly, the Loops Flexbrush) is approximately 20 to 30 times (i.e. 4 cents
7       versus 80 cents) that of the disposable toothbrushes sold by Amercare, the
        Flexbrushes are not in much demand throughout the United States.

8    Dkt. #64-4 at ¶ 7.

9           Defendants contend that the TB-FLX is not a flexible handled toothbrush, but rather, a

10  "fingertip toothbrush" comprised of a "thin, hollow sheath that cover[s] the user's finger" during

11  use.  Dkt. #274 at ¶ 7.  Defendants explain that the TB-FLX was a second-generation fingertip

12  toothbrush designed to remedy safety concerns associated with the Securitas No-Shank Fingertip

13  Toothbrush, which was known to slip off users' fingers and causes choking hazards.  The longer

14  sheath of the TB-FLX was purportedly designed to prevent these choking hazards.  Defendants

15  explain that Amercare charged more for this design because it used more materials and was

16  believed to be a better product than the shorter Securitas No-Shank Fingertip Toothbrush

17  product.  Dkt. #275 at ¶ 6.

18          Defendants' argument that the TB-*FLX* Better than No-Shank *Flexible* Toothbrush was

19  not a flexible-handled toothbrush is difficult to credit.  Defendants offer no explanation for why

20  they would call a toothbrush a "flexible" toothbrush when it in fact did not a have a flexible

21  handle.  If the TB-FLX were meant to be a second-generation TB-NS No Shank Fingertip

22  Toothbrush, why was the product not called the "Better Than No Shank *Fingertip* Toothbrush"?

23

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 10

1   In addition, the price of the TB-FLX is suspiciously similar to the price of the Amerfresh

2   product at issue in this lawsuit.   An August 2009 declaration by Ms. Hemming explained that

3   the sales price for flexible handle toothbrushes are 20-30 times the price for normal disposable

4   toothbrushes, i.e., 80 cents compared to 4 cents.  Dkt. #64-4 at ¶ 7.  The TB-FLX is listed on the

5   newly-discovered price sheet at a price of 75 cents.  Dkt. #263-2 at 15.  Defendants argue that

6   the high price is due to the fact that more materials were used and because it was a better product

7   than the TB-NS.  However, Defendants do not present any evidence regarding design

8   specifications, the cost of materials, how Defendants acquired the TB-FLX, or any of the dates

9   associated therewith.  Moreover, there are no other toothbrushes on the price sheet that are even

10  close to the 75-80 cent range.  *Id.*  Rather, all of the remaining toothbrushes on the price sheet,

11  except for the "TB-NS No Shank Fingertip Toothbrush," range in price from 4 to 16 cents.  *Id.*

12  The TB-NS is listed at 50 cents – still, only two thirds the price of the TB-FLX.  *Id.*  The Court is

13  inclined to agree with Plaintiffs that it appears that "Defendants have simply taken the highest

14  cost toothbrush on their product price list – the no shank toothbrush offered for 50 cents each –

15  and concocted a story that the TB-FLX is an alternative version of the no shank toothbrush."

16  Dkt. #279 at 7.

17         Plaintiffs argue that the newly-discovered price sheets indicate that declarations filed by

18  Defendants throughout the litigation are knowingly false.   Specifically, Plaintiffs point to the

19  following purportedly false statements:

20  -   Wendy Hemming's September 29, 2009 declaration in support of Defendant's Motion

21       for Summary Judgment in which Ms. Hemming declared "the Amerfresh FHT has only

22       been offered for sale, and only sold to one such customer, the city of New York's

23

24

1   Department of Corrections, through the city's purchasing department, the NY-DCAS."

2   Dkt. #80 at ¶ 13.

3   -   Wendy Hemming's December 21, 2009 declaration in which she stated she "continued

4        to see if any additional documents were available" and that to her understanding "there

5        are no more documents within Amercare's possession, custody, or control that fall

6        within the court's Order."  Dkt. #129 at ¶ 8.

7   -   Julie Siegel's December 21, 2009 declaration in which Ms. Siegel stated that "all

8        documents and information I discovered during my search that related to the Amercare

9        TB 38-S toothbrush have been provide to Loops in discovery,"  Dkt. #128 at ¶ 6, and

10       "there are no documents within Amercare's possession, custody, or control related to the

11       TB 38-S toothbrushes that have not been previously produced to the plaintiffs in this

12       case," Dkt. #128 at ¶11.

13  -   Wendy Hemming's January 29, 2010 declaration repeating her earlier representation that

14       beyond "the sales to the NY-DCAS, there have been no sales or offers to sell the

15       accused Amercare Amerfresh FHT toothbrush to any other person or customer."  Dkt.

16       #136 at ¶5.

17  -   Wendy Hemming's March 3, 2010 declaration in support of Defendants' motion for

18       summary judgment, wherein Ms. Hemming repeated her earlier representation that "the

19       Amerfresh FHT has only been offered for sale, and only sold to one such customer, the

20       city of New York Department of Correction."  Dkt. #156 at ¶ 10.

21  Plaintiffs argue that each of these statements are false because they conceal the existence of the

22  July 2007 price lists that identity a flexible handle toothbrush for sale at 75 cents each, conceal

23

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 12

1   the West Virginia bid, and conceal the use of the July 2007 product price lists for other bidding

2   purposes.

3          If the Court could conclusively determine that the TB-FLX was in fact a flexible handled,

4   infringing toothbrush, the Court would agree with Plaintiffs.  Nonetheless, Defendants' tenuous

5   explanation for the discrepancy between its declarations and the West Virginia price sheet does

6   not salvage its reputation before this Court. Even if Defendants' statements about the TB-FLX

7   being a fingertip toothbrush are true, this does not explain why Ms. Hemming testified at her

8   deposition, under oath, that a price sheet that did not include the TB-FLX was her current price

9   sheet and that she had not changed her price sheet "for years." Dkt. #262, Ex. D at 31:15-20.

10  Ms. Hemming made this statement in November 2009, one month before the newly-discovered

11  price sheet was sent to West Virginia.  The newly-discovered price sheet was marked "effective

12  date 07/07/07."   Thus, the price sheet was in use well before Ms. Hemming's deposition

13  testimony.  Defendants do not offer any explanation for Ms. Hemming's false testimony.

14  Furthermore, both Ms. Hemming and Ms. Siegel have provided declarations in connection with

15  the instant motion in which they concede that multiple versions of the price sheet have always

16  existed.  Dkt. #276 at ¶ 4; Dkt. # 275 at ¶ 4.  Had Ms. Hemming's testimony been truthful at the

17  time of her deposition, this motion would not be before the Court today.

18         In addition, regardless of whether the TB-FLX product is what the Defendants claim it is,

19  Defendants should have disclosed the price sheet to Plaintiffs during the course of discovery.

20  Defendants' failure to do so violated the Court's November 2009 order requiring Defendants to

21  produce "all documents that related to soft-handled toothbrushes."   Dkt. #69.  Defendants argue

22  that the price sheet does not fall within this order because it is considered to be a handle-less

23  design.  Since it has *no* handle, argue Defendants, it does not fall within the Court's order that

24

1   Defendants produce all documents related to toothbrushes with soft *handles*.   To support this

2   argument, Defendants point to the patent for the Securitas No-Shank toothbrush, which is

3   entitled "Finger Toothbrush/*Handle-less* Toothbrush."   This justification simply does not excuse

4   Defendants' failure to produce the price sheets.

5       As an initial matter, Defendants' argument that the TB-FLX is actually a toothbrush

6   without a handle is nothing more than semantic somersaulting.  The photograph of what

7   Defendants claim to be the TB-FLX demonstrates a toothbrush device made of transparent

8   material that fits over a user's outstretched finger and extends at least down to the second

9   knuckle of an adult's index finger. Dkt. #276, Ex. B.  In other words, there is a significant

10  portion of the toothbrush that does not have bristles on it and that serves no other purpose that

11  manipulation of the toothbrush – like a handle.  In contrast, a photograph of the Securitas No

12  Shank toothbrush, reveals a toothbrush that fits over the very tip of an adult's finger, which stops

13  short of an adult's first knuckle.  There is no portion of the brush that exists solely for the

14  purpose of manipulation – the hollow of the brush, where a finger may be inserted, is the same

15  part of the brush upon which the bristles are located. Given the significant difference in the

16  extent to which the non-brush portion of these two devices extend down one's finger, the Court

17  cannot accept Defendants' claim that the purported TB-FLX toothbrush does not have a handle

18  simply because the Securitas toothbrush – a completely different toothbrush – does not.

19      More importantly, the November 2009 order did not differentiate between toothbrushes

20  that had a handle, and those that did not.  It differentiated between toothbrushes with flexible

21  handles and those with non-flexible handles.  *See* Dkt. #69.  Thus, in determining whether the

22  TB-FLX fell within the Court's order, Defendants should have considered whether the

23  toothbrush was more like a flexible-handled toothbrush, or a non-flexible handled toothbrush,

24

1   not whether the toothbrush could be properly considered to have no handle at all.  *See* Dkt. #69.

2   *See also* Fed. R. Civ. 26(b)(1).  If the TB-FLX is what Defendants claim it to be, the description

3   of the TB-FLX ("TB-FLX – Better Than No-Shank Flexible Toothbrush) indicates that the

4   transparent material seen in the photograph is a flexible material.  Thus, it is evident that the TB-

5   FLX was more like a flexible handle toothbrush than a non-flexible handle toothbrush.  The price

6   list should have been produced.

7        Having found that Defendant Wendy Hemming lied while under oath, that Defendants

8   violated the Court's November 2009 discovery order, and that Defendants may have submitted

9   numerous false declarations in this lawsuit, the Court turns to the question of what is the

10   appropriate sanction.  In making this determination, the Court notes that Defendants have already

11   been found to have lost, destroyed, or withheld material documents, including invoices, purchase

12   orders and emails between Amercare and its Chinese or Taiwanese contracts that were relevant

13   to liability and damages.  *See* Dkt. #152.   In addition, on June 1, 2010, the Court granted

14   Defendants leave to have Mr. Lai appear at deposition for H&L Industrial by videoconference

15   based on Defense counsel's representation that "it appears impossible to obtain the necessary

16   paperwork to bring him to Seattle at this time."  Dkt. #203; Dkt. #193.   In its order granting

17   leave, the Court noted, "Defendants' counsel has investigated the matter and has represented to

18   this Court that acquiring the visa takes a minimum of three months.  The Court will accept

19   counsel's representations."  Dkt. #203 at 2.  However, on June 21, 2010, Mr. Lai testified under

20   oath that he had made no efforts to travel to the United States for his deposition, had within his

21   possession a five-year visa, and could travel to the United States at any time.  Dkt. #215, Ex. A at

22   85-88.  The Court is tremendously concerned with what appears to be a prolonged pattern of

23   misrepresentation and deceit before this Court.

24

1    Federal Rule of Civil Procedure 37 states in pertinent part that, "if a party or a party's

2    officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) –

3    fails to obey an order to provide or permit discovery including an order under Rule 26(f), 35, or

4    37(a), the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37

5    (b)(2)(A).  Such orders may include the following:

6        *(i)*    Directing that the matters embraced in the order or other designated facts be taken

7            as established for purposes of the action, as the prevailing party claims;

8        *(ii)*    Prohibiting the disobedient party from supporting or opposing designated claims

9            or defenses, or from introducing designated matters in evidence;

10       *(iii)*    Striking pleadings in whole or in part

11       *(iv)*    Staying further proceedings until the order is obeyed

12       *(v)*    Dismissing the action or proceeding in whole or in part

13       *(vi)*    Rendering a default judgment against the disobedient party; or

14       *(vii)*    Treating as contempt of court the failure to obey any order to submit to a physical

15           or mental examination.

16   Courts have "considerable discretion to impose the extreme sanction of dismissal or default

17   where there has been flagrant, bad faith disregard of discovery duties."  *Wanderer v. Johnston*,

18   910 F.2d 652, 656 (9th Cir. 1990).

19       Here, the Court has already imposed the sanction of an adverse instruction.  *See*  Dkt.

20   #152.  Apparently, this has done little to promote respect for the integrity of the discovery

21   process.  Furthermore, it is unclear how an adverse instruction would now alleviate the damage

22   that has been caused by Defendants' continued failure to cooperate with Plaintiffs in discovery.

23   Partial summary judgment has already been issued in favor of Defendants on the issue of

24

ORDER GRANTING PLAINTIFFS' RULE 37 MOTION TO STRIKE ANSWER; ENTER DEFAULT
JUDGMENT; AND GRANT MONETARY SANCTIONS - 16

1   monetary damages based on evidence – which the Court believed to be complete – that

2   Amercare had not sold or offered for sale flexible handled toothbrushes after May 2008.  The

3   Court is now faced with new evidence that may or may not demonstrate that the partial summary

4   judgment order was made in error.

5           In any case, the new evidence, combined with the pattern of deception and

6   misrepresentation on the part of Defendants throughout this litigation, indicates that the Court

7   cannot be certain that any order it enters in this case will be supported by the benefit of a full,

8   unadulterated record.  Neither Plaintiffs, nor the Court, will ever "have any comfort that it knows

9   the truth, and that it can properly prepare this case for trial.... The integrity of this Court and our

10  judicial system ... has been undermined … [by Defendants'] conduct in this case." *Monsanto*

11  *Co. v. Ralph*, 382 F.3d 1374, 1379 (Fed. Cir. 2004).  Accordingly, the Court exercises its

12  discretion pursuant to Rule 37 and hereby strikes the pleadings of Defendants, including

13  Defendants' answer and affirmative defenses, and enters judgment in favor Plaintiffs on the issue

14  of liability.  The Court further sanctions Defendants and counsel for Defendants through an

15  award of attorneys fees and costs in amount to be determined through the submission of

16  declarations.  *See* Fed. R. Civ. P. 37(b)(2)(C).

17

18                                    **IV. CONCLUSION**

19

20          Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

21  and the remainder of the record, the Court hereby finds and ORDERS:

22

23

24

1    (1)  Plaintiffs' Rule 37 Motion (Dkt. #261) is GRANTED.    The Clerk of the

2    Court is directed to enter default judgment against Defendants.  All pending motions are stricken

3    from the docket.

4    (2)  The Clerk is directed to forward a copy of this Order to all counsel of record.

5

6    Dated March 15, 2011.

7

8

9    RICARDO S. MARTINEZ

10   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24