UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOOPS LLC, a Delaware limited liability company, LOOPS FLEXBRUSH LLC, a Delaware limited liability company, | CASE NO. C08-1064RSM |
| Plaintiffs, | ORDER VACATING PRIOR ORDER ON SANCTIONS |
| v. | |
| PHOENIX TRADING, INC., dba AMERICARE PRODUCTS, INC., a Washington corporation; WENDY HEMMING, an individual; JEFFREY R. HEMMING, an individual; H&L INDUSTRIAL, a business of unknown formation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

I.      INTRODUCTION

        THIS MATTER comes before the Court after remand from the Federal Circuit Court of Appeals, which has affirmed in part and reversed in part this Court's prior Orders entering default against Defendants and assessing various sanctions against Defendants and their counsel. *See* Dkts. #152, #287, #345 and #360.  Having reviewed the Order and Mandate issued by the Court of Appeals, this Court now vacates its prior Orders and enters a new Order as set forth herein.

## II.     BACKGROUND

**A. The Underlying Lawsuit**

Plaintiffs Loops, LLC and Loops Flexbrush, LLC (collectively "Loops") allege in this action that Amercare fraudulently obtained a sample of the patented Loops Flexbrush, sent the sample to China to be copied, and sold the infringing copies at a low price, outbidding Loops on a supply contract.  Loops brings claims for patent infringement, violations of the Lanham Act, unfair competition under Washington common law, violations of the Washington Consumer Protection Act, and fraud.

Steven Kayser is the inventor of the Loops Flexbrush, a small flexible handle toothbrush designed for safe use in prisons.  The Flexbrush comes in 4.25 inch and 3 inch sizes.  It is made of flexible material, allowing the toothbrush to be bent in half or twisted into a spiral without breaking.  The Flexbrush is well-suited for use in correctional facilities because its soft handle cannot be fashioned into a weapon, known in the vernacular as a shank.  Kayser is the founder of Plaintiffs Loops LLC and Loops Flexbrush LLC, and has assigned his relevant intellectual property rights to those companies.  Loops also sells prison-safe dental floss.

Amercare is a Washington corporation that imports a wide variety of health and toiletry items such as toothbrushes, shampoo, and soap, and resells them to customers, including prisons. Defendant Wendy Hemming ("Hemming") is the majority shareholder and president of Amercare.  Her husband, Defendant Jeffrey Hemming, was at various times relevant to this lawsuit a minority shareholder, officer, and employee of Amercare.   H&L Industrial is Amercare's manufacturer's representative, located in China.

H&L Industrial manufactures foam used for toys, but does not manufacture any other products itself.  Rather, it acts as a broker; when Amercare seeks to import a certain product into

1 the United States, it contacts Mr. Lai at H&L Industrial whose job it is to locate a factory that

2 can produce that product.   H&L Industrial coordinates obtaining the product from a

3 manufacturer, inspecting the product, and arranging with Chinese export agencies to have the

4 product shipped.  Typically Amercare pays H&L a lump sum of money; H&L uses that money to

5 pay the manufacturer and other costs and keeps a 15 to 30 percent commission.

6      On January 13, 2006, Ms. Hemming telephoned Kayser requesting that Loops provide

7 her with price quotations for Loops's dental floss for one of Amercare's clients.  She also

8 requested that Loops provide her with samples of all its products, including the Loops Flexbrush.

9 Loops sent samples of its 4.25 inch toothbrush in the colors blue and white.

10      Approximately two weeks later, Hemming contacted Loops to order dental floss to

11 distribute to her customers.  During the next year, she continued to order floss periodically,

12 placing six orders with Loops between January 26, 2006 and January 23, 2007.

13      In May 2006, Amercare placed a bid with the New York City Department of Corrections

14 ("NYC-DOC") to supply Loops Flexbrush toothbrushes.  The bid sheet Amercare submitted

15 stated that Amercare was the bidder and that it was offering to supply "Loops Flexbrush."  Loops

16 was not aware that Amercare submitted this bid, nor had Loops agreed to sell Amercare its

17 Loops Flexbrush or allow Amercare to distribute it.  Amercare did not win its 2006 bid and

18 consequently never sold any Loops Flexbrushes to NYC-DOC.  Between August 2006 and June

19 2007, NYC-DOC purchased Loops Flexbrushes from Loops.

20      On January 23, 2007, Hemming and Kayser had another telephone conversation.

21 Hemming informed Kayser that she wished to sell the Loops Flexbrush and she would like

22 Loops to "give" all of its flexible handle toothbrush contracts, including its NYC-DOC contract,

23 to Amercare so that Amercare could be a reseller or distributor of the Loops Flexbrush.  Kayser

24

1  believed that to allow Amercare to be a reseller would constitute "bid rigging" or "collusion" and

2  refused.  Hemming requested that Loops provide additional samples of the Loops Flexbrush.  On

3  January 26, 2007, Kayser and Hemming met in person at Amercare's offices.  Hemming again

4  requested that Loops allow Amercare to service its contracts and resell its Flexbrush, and Kayser

5  again refused.   In February 2007, Loops sent Amercare additional samples of its Flexbrush

6  toothbrush in response to Amercare's earlier request.

7       Sometime in the early months of 2007, NYC Department of Administrative Services

8  decided to put the NYC-DOC toothbrush contract up for bid.   Loops provided product

9  specification sheets, information regarding the material composition of its toothbrushes, and

10  samples of its Flexbrush to NYC-DOC.  NYC-DOC published bid documents seeking a "Loops

11  Flexbrush # FBM 02 or equal" for the period August 30, 2007 to November 29, 2010.

12       On April 23, 2007, Hemming made one last attempt to convince Kayser to allow

13  Amercare to service Loops's contracts.  Hemming admits that before the meeting began, she

14  intended that if the negotiation failed, she would send the samples of the Loops Flexbrush to

15  China to have them copied and would use those copies to bid against Loops for the NYC-DOC

16  contract.  She did not reveal this intention to Kayser.  Kayser did refuse Hemming's offer, and

17  Hemming carried out her plan.  Immediately following that conversation, Hemming sent samples

18  of the Loops Flexbrush to Mr. Lai in Taiwan to have them copied by a Chinese manufacturer.

19  Hemming was familiar with the price Loops would charge Amercare for Flexbrushes and

20  intended to bid lower than that amount to beat Loops's bid. According to Hemming, the

21  Flexbrush sample she sent to China was blue, meaning that it was from the batch of samples

22  provided in 2006.  Molds for manufacturing the copied toothbrushes were ordered in May and

23  June 2007.

24

ORDER VACATING PRIOR ORDER ON SANCTIONS - 4

1      On April 24, 2007, Amercare submitted a bid to NYC-DOC.  The bid document stated

2 that Amercare was willing to provide the "Amerfresh Soft Handle = Equal to Loops FBM02"

3 made by "Amercare Products, Inc."  The Amerfresh Soft Handle, manufactured in China, is an

4 identical copy of the blue Loops Flexbrush in every respect except one.  Whereas the words

5 "LoopS™ Flexbrush™" are embossed in raised lettering on the back side of the head of the

6 Loops Flexbrush (opposite the bristles), the name "AmerCare" is embossed on the Amerfresh

7 toothbrush in the same place and in the same font.

8      Having the lowest bid, Amercare won the contract to provide flexible toothbrushes to

9 NYC-DOC.  Amercare's bid was more than 60% lower than Loops's bid.  There were no other

10 qualified bidders.  Amercare provided NYC-DOC with Amerfresh Soft Handle toothbrushes

11 from October 31, 2007 to May 22, 2008.

12      Loops submitted its patent application for the Loops Flexbrush in August 2004.  The

13 patent, number 7,334,286 B2 ("286 patent") did not issue until February 26, 2008.  The Loops

14 Flexbrush does not have, and never has had, any markings on the toothbrush itself indicating that

15 it is patented or that a patent is pending.  At all times prior to September 2008, the disposable

16 plastic packaging on each individual Flexbrush, including the samples given to Amercare,

17 indicated "patent pending."  Flexbrushes with packaging listing the product's patent number did

18 not enter the United States until September 12, 2008.  Loops sent Amercare a notice of its

19 pending patent application on November 17, 2007.  It did not send Amercare a notice that its

20 patent issued until June 13, 2008.

21 **B. Procedural History**

22      On February 3, 2009, Plaintiffs served Requests for Production of Documents, Set One.

23 Dkt. #261, Ex. A.  The requested documents included all product catalogs and lists for the period

24

of 1/1/06 to the present including paper, web-based or internet product catalogs (RFP#37); all documents related to the sale of soft or flexible handle toothbrushes of approximately 4.25 inches including offers for sale (RFP#24); all documents related to the sale of soft or flexible handle toothbrushes of approximately 4.0-5.0 inches in length, including offers for sale (RFP#25); all documents related to the sale of soft or flexible handle toothbrushes of approximately 3 inches in length, including offers for sale (RFP#26); and all documents related to the sale of soft or flexible handle toothbrushes of approximately 6 inches in length, including offers for sale (RFP#27).  In response to these requests, Defendants produced documents on four occasions.  One production included a product catalog, which did not include a flexible handle toothbrush.  Dkt. #261, Ex. B. Defendants did not produce any price lists.

On August 5, 2009, Plaintiffs filed a Motion to Compel Discovery.  Dkt. #59.  In ruling on the Motion to Compel, the Court made the following Order:

> [A]ll documents that relate to soft-handled toothbrushes are relevant and must be produced if responsive to a request.  It is unclear from the record whether Defendants have ever sold a soft-handled toothbrush other than the Amerfresh Soft Handle toothbrush.  To be clear, if they have, those soft-handled toothbrush sales are relevant to this case and are reasonably calculated to lead [to] the discovery of admissible evidence.

Dkt. #69.  The Court also held that the particular designation used by Defendants for flexible handle toothbrushes was irrelevant for the purpose of producing documents:

> All flexible handle toothbrushes manufactured or shipped by Defendants are relevant to this case, regardless of the product number used to refer to them.  Thus Defendants should not limit their discovery responses to one product number if there are others relating to flexible toothbrushes.

*Id.*  The Court ordered that "[a]ll requests for documents that are constrained to matters relating to flexible handle toothbrushes are proper requests with which Defendants must comply."

1    On November 3, 2009, Plaintiffs took the deposition of Ms. Hemming.  During this

2    deposition, Plaintiffs marked an exhibit that they had independently discovered through a

3    Freedom of Information Act request.  The exhibit was an Amercare product price list, which did

4    not contain any flexible toothbrushes and did not contain a toothbrush denominated "TB-FLX".

5    Dkt. #262, Ex. C.  Ms. Hemming testified that the marked product list was her current price sheet

6    and that she had not changed her price sheet for years.  *Id.,* Ex. D at 31:15-20.

7    On March 3, 2010, the Court granted Plaintiffs' Motion for Contempt of Court Sanctions

8    based on evidence that Amercare had lost, destroyed, or withheld relevant documents regarding

9    its transactions with Chinese entities that were relevant to damages and liability. Dkt. #152. In

10   doing so, the Court made the following findings:

11   Defendants had four or five invoices from Kai Yuen/ Jiangsu Light within
        their possession or control during the pendency of this litigation.  They only
12      produced two of them. Defendants were also in control of purchase orders
        for flexible handle toothbrushes sent from Amercare to H&L Industrial, and
13      invoices from H&L to Amercare, which were not produced. Additionally,
        Defendants were in control of invoices detailing freight charges for
14      transportation of flexible toothbrushes from factories in China to Chinese
        ports as well as wire transfers from Amercare to H&L Industrial, and these
15      have not been produced.  The Court finds that Defendants are culpable in
        either withholding these documents or negligently destroying or losing them
16      after having a duty to preserve them.  The Court further finds that these
        materials were relevant to prove the extent of Defendants' damages.
17      Finally, the Court finds that some number of e-mails between Amercare and
        H&L existed during the pendency of this lawsuit which were not produced
18      and have since been negligently deleted.  These e-mails were likely relevant
        to damages and liability. Defendants' contention that no documents have
19      been destroyed and no more responsive documents exist is directly
        contradicted by Ms. Hemming's deposition testimony, which indicates that
20      relevant documents do or did exist.

21   *Id.* at 7.  Having made these findings, the Court entered an adverse inference instruction against

22   Defendants. *Id.*

23

24

1    In its July 30, 2010 Order on Summary Judgment, this Court determined that Amercare's

2    last shipment to NYC-DOC occurred before Loops sent Amercare notice on June 13, 2008 that

3    its patent on the Flexbrush had issued.   Dkt. #233.   The Court also found that Flexbrushes with

4    packaging listing the product's patent number did not enter the United States until September 12,

5    2008, months after Amercare's last sale to NYC-DOC.   *Id.*   As a result, this Court held that

6    Loops was not entitled to any monetary damages from Amercare or Hemming.   *Id.* at 7 ("Since

7    all of Amercare's importation and sales of its Amerfresh Soft Handle toothbrush occurred on or

8    prior to May 22, 2008, long before the Loops Flexbrush was properly marked, section 287 bars

9    Loops from recovering infringement damages.").   The Court reached this conclusion based on

10   the evidence before it.   Its decision was specifically predicated on the finding that Amercare had

11   not sold any soft handle toothbrushes after May 22, 2008.   Shortly thereafter, based on the same

12   understanding regarding the date of the last shipment of Amercare soft handle brushes and the

13   date upon which Amercare was made aware of Loops' issued patent, the Court dismissed

14   plaintiffs' claims for monetary damages against H&L Industrial as well. Dkt. #236.

15   Plaintiffs   continued   to   seek   evidence   of   Defendants   having   sold   soft   handled

16   toothbrushes after the date upon which they became aware that a patent had issued to Loops.

17   Accordingly, Plaintiffs sent Freedom of Information Acts to various correctional institutions.

18   In August, 2010, Plaintiffs sent a Freedom of Information Act request for documents to

19   the State of West Virginia.   The request sought vendor catalogs of Amercare products.   Shortly

20   thereafter, the State of West Virginia sent Loops Flexbrush, LLC responsive documents.   The

21   documents revealed that in December, 2009, Defendants provided a Response to a Request for

22   Quotation to the State of West Virginia.   The response was personally signed by Wendy

23   Hemming and notarized by Julie Siegel.   Dkt. #262, Ex. F.   It contained two price lists, each

24

1   including a toothbrush, designated by "TB-FLX," called the "Better Than No-Shank Flexible

2   Toothbrush."  The TB-FLX brushes were offered for sale for 75 cents each.  The price sheet was

3   never produced in discovery, yet the lists themselves contained the marking, "effective date

4   07/07/07".

5          As a result, Plaintiffs brought a Motion to Strike Answer, Enter Default Judgment, and

6   Grant Monetary Sanctions.   Dkt. #261.   Plaintiffs argued that the price sheets show that

7   Defendants have suppressed material evidence throughout the litigation, have filed false

8   declarations based on the suppressed evidence, have successfully been granted summary

9   judgment based on the false declarations, and are seeking attorneys fees based on the false

10  records in this action.  Plaintiffs request the Court strike the pleadings of Defendants, including

11  Defendants' answer and affirmative defenses, and enter judgment in favor of Plaintiffs.

12         On March 15, 2011, this Court entered an Order granting Plaintiff's motion.  Dkt. #287.

13  This Court found that Ms. Hemming has falsely testified at her deposition with respect to price

14  sheets, and that the price sheets obtained from Virginia should have been produced in discovery.

15  Dkt. #287 at 13.  The Court further found that Defendants "may" have produced numerous false

16  declarations in this matter.  *Id.* at 15.  The Court then noted other instances of deceptive actions

17  by Defendants, including that they had lost, destroyed or withheld material documents, and that

18  defense counsel had misrepresented to the Court that Mr. Lai was unavailable for deposition in

19  the United States when in fact that was not true.  *Id.*

20         Because the Court believed that its prior sanction of an adverse instruction had done little

21  to deter Defendants' deceitful practices, and that such an instruction could no longer alleviate the

22  damage that had been caused by Defendant's subsequent actions, the Court entered an Order

23  striking the pleadings of Defendants, including their Answer and Affirmative defenses, entered

24

1   judgment in favor of Plaintiffs, and entered monetary sanctions for attorneys fees and costs.  Dkt.

2   #287 at 17.   In subsequent proceedings, the Court awarded Plaintiffs $54,718.85 in default

3   damages with prejudgment interest, and $200,926.00 in attorney's fees plus recoverable costs.

4   Dkt. #345 at 15.

5       Defendants appealed.  On November 13, 2014, the Federal Circuit Court of Appeals

6   issued its Order affirming in part and reversing in part this Court's prior Orders.[1]  Dkt. #360.

7   Specifically, the Court of Appeals first held that: 1) this Court did not abuse its discretion in

8   finding that Hemming testified falsely at her deposition as to the price list; 2) this Court did not

9   abuse its discretion insofar as it based its sanctions against Amercare and Hemming for violation

10  of the discovery order based on a failure to produce the price list; 3) the Court did abuse its

11  discretion in so far as it based sanctions on a finding that Defendants "may have" submitted

12  numerous false declarations in this lawsuit; and 4) with respect to the Lai deposition, it was an

13  abuse of discretion for the district court to sanction Amercare, Hemming, or Klingbeil for the

14  misconduct of a co-defendant.  Dkt. #360 at 7-11.

15      The Federal Circuit Court of Appeals then held that remand was necessary, providing

16  explicit instructions to this Court for reconsideration of the sanctions previously imposed:

17          On remand, the district court should consider the appropriate sanction for
            the false deposition testimony and violation of the discovery order.   The
18          district court should also consider the factors articulated by the Ninth
            Circuit with respect to default judgment sanctions pursuant to Rule 37: "(1)
19          the public's interest in expeditious resolution of litigation; (2) the court's
            need to manage its docket; (3) the risk of prejudice to the other party; (4)
20          the public policy favoring the disposition of cases on their merits; and (5)
            the availability of less drastic sanctions."  *Hester v. Vision Airlines*, 687
21          F.3d 1162, 1169 (9th Cir. 2012) (quoting *Malone v. U.S. Postal Serv.*, 833

22  _____

23  [1]  The Court notes that for unknown reasons, it did never received copies of the Court of
    Appeals' Order or Mandate, and did not become aware that the appeal had been resolved until
24  reviewing subsequent briefing filed by Plaintiffs in this matter.  *See* Dkt. #362.

ORDER VACATING PRIOR ORDER ON SANCTIONS - 10

1       F.2d 128, 130 (9th Cir. 1987)).  The risk of prejudice is a "decisive" factor
      where a default sanction is imposed.  *Adriana Int'l Corp. v. Thoeren*, 913
2       F.2d 1406, 1412 (9th Cir. 1990); *see also Wanderer v. Johnston*, 910 F.2d
      652, 656 (9th Cir. 1990) ("[T]he key factors [in assessing a Rule 37 default
3       or dismissal sanction] are prejudice and availability of lesser sanctions.").

4 Dkt. #360 at 11-12.  The court also noted:

5       It is difficult to see what the prejudicial effect was, if any, of the failure to
      produce the price list.  The July 2008 import, which was the basis for the
6       damages award, does not seem to bear a relation to the unproduced price list
      or the TB-FLX toothbrush.
7
Dkt. #360 at 12, fn. 4.
8
     The  Court  of  Appeals  then  examined  the  attorney's  fees  and  cost  sanctions  against
9
attorney Klingbeil.  Dkt. #360 at 12-13.  With respect to those sanctions, the court found:
10
11       The two remaining grounds for possibly sanctioning Klingbeil are thus the
      false deposition testimony and the violation of the discovery order.  The
12       false deposition testimony is not a proper ground because the district court
      did not make any findings of Klingbeil's culpability on this issue, and
13       appeared to rely on Federal Rule of Civil Procedure 37(b)(2)(C), which
      only provides for sanctions based on the violation of a court order, not false
14       deposition testimony.  *See Toth v. Trans World Airlines*, 862 F.2d 1381,
      1385–86 (9th Cir. 1988) (Rule 37(b)(2) only "provides for the award of
15       reasonable expenses and attorney's fees 'caused by the failure' to obey a
      court order to provide or permit discovery.  Expenses incurred outside of
16       this particular context are not provided for in Rule 37(b)(2).").

17       The question, therefore, is whether the failure to comply with the court's
      discovery order was sufficient for the district court to award sanctions
18       against Klingbeil.  The district court did not find that Klingbeil was
      culpable for this violation, and there is record evidence to support counsel's
19       assertion that he instructed his clients to locate and produce relevant
      documents throughout the course of the case.  On remand, the district court
20       should first determine whether Klingbeil's failure to comply with the
      discovery order was "substantially justified" or the result of "other
21       circumstances [that] make an award of expenses unjust." Fed. R. Civ. P.
      37(b)(2)(C); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir.
22       1994) ("unjust" in Rule 37 "requires us to consider the attorney's behavior,
      rather than the client's actions"); *Liew v. Breen*, 640 F.2d 1046, 1050 (9th
23       Cir. 1981) ("Although 'wilfullness' need not be present in order to impose
      sanctions under Rule 37(b), a good faith dispute concerning a discovery
      question might, in the proper case, constitute 'substantial justification.'"

24

> (citation omitted)).  If Klingbeil is sanctioned for the discovery order, then the district court should determine what portion of the $200,926.00 in attorney's fees and costs were "caused by the failure" to comply with the discovery order. Fed. R. Civ. P. 37(b)(2)(C).

Dkt. #360 at 12-13.

## III.    DISCUSSION

### A.  No Further Briefing Required

As an initial matter, the Court finds no additional briefing necessary from the parties at this time.  Given the explicit direction provided by the Federal Circuit Court of Appeals, and the fact that this Court is to reconsider its prior Orders based on what was before the Court at the time the Orders were issued, the Court finds that it is not necessary for the parties to provide any additional briefing or documents.

### B.  Sanctions for False Deposition Testimony and for Violation of the Court's Discovery Order

As noted above, the Federal Circuit Court of Appeals affirmed sanctions against Defendants based on Ms. Hemming's false deposition testimony and for violating the Court's discovery order.  The court directed this Court to consider the appropriate sanction for those actions, and, in doing so, to consider the factors articulated by the Ninth Circuit with respect to default judgment sanctions pursuant to Rule 37: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Hester v. Vision Airlines*, 687 F.3d 1162, 1169 (9th Cir. 2012) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)).

With respect to default judgment, the Court of Appeals all but reversed this Court in noting that the risk of prejudice factor is "decisive," and that "[i]t is difficult to see what the

1  prejudicial effect was, if any, of the failure to produce the price list."  Dkt. #360 at 12.  With that

2  direction, the Court hereby VACATES is previous entry of default against Defendants and

3  reinstates its pleading, including its Answer and Affirmative Defenses.

4       With respect to other sanctions against Defendants for Ms. Hemming's false deposition

5  testimony and for violating the Court's discovery order, the Court finds as follows.  The Court

6  previously noted its concerns with Defendants' behavior in this matter:

7
8
9
> In making this determination, the Court notes that Defendants have already been found to have lost, destroyed, or withheld material documents, including invoices, purchase orders and emails between Amercare and its Chinese or Taiwanese contracts that were relevant to liability and damages. *See* Dkt. #152.
> . . .

10
11
12
13
14
15
16
> Here, the Court has already imposed the sanction of an adverse instruction. *See* Dkt. #152.  Apparently, this has done little to promote respect for the integrity of the discovery process.  Furthermore, it is unclear how an adverse instruction would now alleviate the damage that has been caused by Defendants' continued failure to cooperate with Plaintiffs in discovery. Partial summary judgment has already been issued in favor of Defendants on the issue of monetary damages based on evidence – which the Court believed to be complete – that Amercare had not sold or offered for sale flexible handled toothbrushes after May 2008.  The Court is now faced with new evidence that may or may not demonstrate that the partial summary judgment order was made in error.

17
18
19
20
> In any case, the new evidence, combined with the pattern of deception and misrepresentation on the part of Defendants throughout this litigation, indicates that the Court cannot be certain that any order it enters in this case will be supported by the benefit of a full, unadulterated record. Neither Plaintiffs, nor the Court, will ever "have any comfort that it knows the truth, and that it can properly prepare this case for trial.... The integrity of this Court and our judicial system ... has been undermined … [by Defendants'] conduct in this case." *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1379 (Fed. Cir. 2004).

21

22

23

24

1   Dkt. #287 at 15-17.  Nothing in the Court of Appeals' decision alters those conclusions.[2]

2          Federal Rule of Civil Procedure 37 states in pertinent part that, "if a party or a party's

3   officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) –

4   fails to obey an order to provide or permit discovery including an order under Rule 26(f), 35, or

5   37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P.

6   37(b)(2)(A).  Such orders may include the following:

7       *(i)*     Directing that the matters embraced in the order or other designated facts be taken as

8                 established for purposes of the action, as the prevailing party claims;

9       *(ii)*    Prohibiting the disobedient party from supporting or opposing designated claims or

10                defenses, or from introducing designated matters in evidence;

11      *(iii)*   Striking pleadings in whole or in part;

12      *(iv)*    Staying further proceedings until the order is obeyed;

13      *(v)*     Dismissing the action or proceeding in whole or in part;

14      *(vi)*    Rendering a default judgment against the disobedient party; or

15      *(vii)*   Treating as contempt of court the failure to obey any order to submit to a physical or

16                mental examination.

17  Given the violations and circumstances in this matter, the Court finds that Rule 37 does not

18  provide an appropriate remedy in this case, and that monetary sanctions are more appropriate.

19  *Haeger v. Goodyear Tire & Rubber Co.*, __ F.3 __, 2015 U.S. App. LEXIS 12484 (9th Cir. Ariz.,

20  July 20, 2015) ("While Rule 37 also provides a method to sanction a party for failing to comply

21  with discovery rules, it is not the exclusive means for addressing the adequacy of a discovery

22

23  _____

    [2]  This Court no longer bases any of its decision on the speculation that Defendants may have

24  submitted numerous false declarations in this lawsuit.

1   response. . . .  We hold that it was not an abuse of discretion for the district court to rely on its

2   inherent power to sanction the conduct at issue in this case, and to determine that Rule 37 did not

3   provide the appropriate remedy" (citations omitted)).

4          Thus, the Court turns to what monetary sanctions are appropriate.  This Court has

5   previously determined that default damages were appropriate.  Dkt. #345.  Because the Court

6   now vacates its Order entering default, the Court no longer finds those damages to be applicable,

7   and vacates its previous Order regarding the same.

8          However, the Court finds its sanction in the form of attorneys' fees remains appropriate

9   in this case.  Fees awarded under Rule 37 are limited to fees related to abuse of the discovery

10  process.  *Stillman v. Edmund Scientific Co.*, 522 F.2d 798, 801 (4th Cir. 1975) ("Rule 37 deals

11  with the consequences of the failure to make discovery, and authorizes the imposition of

12  sanctions in cases in which there has been an abuse of the discovery rules.").  Since "the

13  sanctions authorized under the Rule must pertain to the discovery process, no assessment may be

14  made for expenses which were incurred independent of that process." *Id.*  Thus, fees shall be

15  limited to those incurred in taking the November 2009 depositions of Hemming and Siegel, for

16  opposing Defendants' motions for summary judgment, for bringing the motion for contempt, for

17  beginning trial preparation, for opposing Defendants' motion for attorney fees, for bringing the

18  Rule 37 motion for sanctions, and for bringing the motion for default damages as described in

19  Dkts. #289 and #290.  This amounts to $33,925.00 incurred by local counsel, Lee Smart, P.S.,

20  Inc.,  Dkt. #289 at ¶ ¶ 7, 8, 9, 11, 12, and 13 and Ex. A, and $153,135.00 incurred by national

21  counsel, Law Offices of Robert M. Steele.  Dkts. #290 at ¶ ¶ 9, 10, 11, 12, 14 and 15 and Ex. A

22  and #343.  The total fees awarded are $187,060.00.

23

24

1    The Court also finds its sanction in the form of costs also remains appropriate in this

2  case.  "The costs that may be awarded to prevailing parties in lawsuits brought in federal court

3  are set forth in 28 U.S.C. § 1920."  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 1999-

4  2000, 182 L. Ed. 2d 903 (2012).   Section 1920 contains six categories of taxable costs: (1)

5  "[f]ees of the clerk and marshal"; (2) "[f]ees of the court reporter for all or any part of the

6  stenographic transcript necessarily obtained for use in the case"; (3) "[f]ees and disbursements

7  for printing and witnesses"; (4) "[f]ees for exemplification and copies of papers necessarily

8  obtained for use in the case"; and (5) "[d]ocket fees under section 1923 of this title"; and (6)

9  "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees,

10  expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C.

11  § 1920.  The current record does not provide a sufficient basis for the Court to award costs,

12  particularly given the current procedural posture of this case and the Court's revised sanctions set

13  forth in this Order.  Accordingly, Plaintiffs are directed to provide the Court with a list of costs

14  that are recoverable under 28 U.S.C. § 1920.  Plaintiffs shall not recover additional fees or costs

15  for time spent complying with this Order.

16  **C. Attorney's Fees Sanction Against Mr. Klingbeil**

17    The Court now turns to which percentage of the above attorney's fee sanction should be

18  entered against defense counsel, Rick Klingbeil, if any.  The Federal Circuit Court of Appeals

19  has already determined that Ms. Hemming's false deposition testimony is not a proper ground on

20  which to impose such a sanction against Mr. Klingbeil.  Dkt. #360 at 12.  Thus, the only question

21  is whether the failure to comply with the Court's discovery order is sufficient to award such a

22  sanction against him, and, if so, in what amount.

23

24

1   After noting that this Court did not find that Klingbeil was culpable for this violation, and

2   there is record evidence to support counsel's assertion that he instructed his clients to locate and

3   produce relevant documents throughout the course of the case, the Court of Appeals directed this

4   Court to "first determine whether Klingbeil's failure to comply with the discovery order was

5   'substantially justified' or the result of 'other circumstances [that] make an award of expenses

6   unjust.'"  Dkt. #360 at 13.  In *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994), the

7   court explained that an "unjust" finding under Rule 37 "requires us to consider the attorney's

8   behavior, rather than the client's actions".  Here, the failure to produce the West Virginia price

9   list at issue does not appear to have been directed by Defendants' counsel, or to have been

10  caused by any other nefarious, intentional conduct by Defendants' counsel.  *See* Dkts. #274-

11  #277.  Accordingly, the Court finds that sanctions are not justified against Mr. Klingbeil and

12  VACATES that portion of its previous Orders.

13                          **IV.   CONCLUSION**

14      1.  The Court's prior Order entering default against Defendants (Dkt. #287) is

15          VACATED IN PART to the extent it imposed default judgment against Defendants.

16          Further, Defendants pleadings are REINSTATED, including their Answer and

17          Affirmative Defenses.

18      2.  The Court's prior Order entering monetary sanctions against Defendants (Dkt. #345)

19          is VACATED in its entirety.

20      3.  Plaintiffs are awarded $187,060.00 in attorney's fees against Defendants as a sanction

21          for Ms. Hemming's false deposition testimony and for their noncompliance with the

22          Court's prior discovery Order.

23      4.  No sanctions are imposed against Mr. Klingbeil.

24

ORDER VACATING PRIOR ORDER ON SANCTIONS - 17

5.   Plaintiffs are directed to submit a bill of recoverable costs.

6.   NO LATER THAN fourteen (14) days from the date of this Order, the parties shall

jointly submit a status report in this case, setting forth which, if any, pre-trial

deadlines should be revised and reinstated in this matter, and informing the Court as

to availability for trial.

DATED this 22nd day of July, 2015.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE