UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOOPS LLC, a Delaware limited liability company, LOOPS FLEXBRUSH LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>PHOENIX TRADING, INC. dba AMERCARE PRODUCTS, INC., a Washington Corporation, et al.,<br><br>Defendants. | Case No. C08-1064RSM<br><br>BENCH ORDER, FINDINGS OF FACT, AND CONCLUSIONS OF LAW |

## I.    INTRODUCTION

In this action, Plaintiffs Loops, LLC and Loops Flexbrush, LLC (collectively "Loops") alleged that Amercare fraudulently obtained a sample of the patented Loops Flexbrush, sent the sample to China to be copied, and sold the infringing copies at a lower price, outbidding Loops on a supply contract. Loops originally brought claims for patent infringement, violations of the Lanham Act, unfair competition under Washington common law, violations of the Washington Consumer Protection Act, and fraud. After numerous dispositive rulings, the only claim left for trial was one for patent infringement, limited only as to Amercare, Wendy Hemming and H&L, and only as to the import in July 2008. Dkt. #405 at 6.

On October 24, 2016, the Court conducted a bench trial in this matter. Prior to that trial, the parties submitted a proposed Pretrial Order, wherein Defendants stipulated to liability and agreed that Plaintiffs were owed compensatory damages. Dkt. #417. The Court adopted

BENCH ORDER
PAGE - 1

the Pretrial Order. Dkt. #418. Accordingly, the only issues left for trial were related to damages – specifically, whether Plaintiffs are entitled to treble damages under 35 U.S.C. § 284, and whether Plaintiffs are entitled to their attorneys' fees under 35 U.S.C. § 285.

At trial, there was one live witness, Defendant Wendy Hemming. The parties had stipulated to the admission of two exhibits – the Loops '286 patent (Exhibit No. 83) and a letter dated June 13, 2008, from Plaintiffs' counsel to Defendant Hemming (Exhibit No. 109) – however, of those two exhibits, only Exhibit No. 109 was actually offered at trial. *See* Dkts. #418 and #426. Plaintiffs also offered additional exhibits – Exhibit Nos. 4, 36, 69, 116, 133, 134 and 136. Following the bench trial, the parties submitted proposed Findings of Fact and Conclusions of Law. Dkts. #424 and #425.

Having considered the pleadings, trial briefs, sworn testimony of witnesses, and exhibits, the Court now FINDS AND CONCLUDES that Plaintiffs are not entitled to treble damages, and are not entitled to attorneys' fees, and makes the following Findings of Fact and Conclusions of Law.

## II. JUDICIAL NOTICE

As the Court previously informed the parties, the Court takes judicial notice of the records filed on the public docket in this matter. Dkt. #426 at 56:8-12; Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## III. FACTS STIPULATED BY THE PARTIES[1]

1. On August 18, 2004, Loops submitted an application for a utility patent for a flexible handle toothbrush to the US Patent & Trademark Office, Application No. 10/920,822.

---

[1] Pretrial Order, Dkt. #418 at 2-3. *See also*, Dkt. #426 (Trial Transcript) and Exhibit Nos. 4, 36, 69, 109, 116, 133, 134 and 136.

BENCH ORDER
PAGE - 2

2. Plaintiffs' representative Steven Kayser and Defendant Wendy Hemming first met via telephone in January 2006.

3. Mr. Kayser sent Ms. Hemming samples of the flexible handle toothbrush in January 2006.

4. The samples received by Ms. Hemming from Mr. Kayser were individually packaged in clear packaging with printing on the packaging which stated patent pending.

5. Ms. Hemming sent the samples she received from Mr. Kayser to China to see if they could be made in China.

6. Defendants manufactured in China an exact copy of the sample flexible handle toothbrushes Ms. Hemming received from Mr. Kayser.

7. On February 26, 2008, the US Patent & Trademark Office granted Loops' utility patent application for a flexible handle toothbrush, Application No. 10/920,822, and issued United States Patent No. 7,334,286 for Toothbrush and Methods of Making and Using Same ('286 Patent).

8. On June 13, 2008, Defendants received actual notice of Loops' patent.

9. On July 11, 2008, Plaintiffs filed this lawsuit alleging a claim for patent infringement of the '286 Patent.

10. On July 23, 2008, Defendants imported 192,672 infringing toothbrushes into the United States.

11. Plaintiffs' damages for Defendants' importation of 192,672 infringing toothbrushes into the United States on July 23, 2008, is $54,718.85.

## IV. CREDIBILITY OF THE WITNESSES

As noted above, only Ms. Hemming testified at trial. The Court finds that she was credible. Her answers during testimony were complete and appeared to be honest, and her demeanor and behavior on the witness stand leads the Court to conclude that she was a truthful, credible witness. *See United States v. Hovsepian*, 422 F.3d 883, 888 (9th Cir. 2005) (*en banc*) ("[T]he district court was entitled to view Appellees as generally credible, despite the government's assertion that Appellees displayed an overall lack of candor and made self-serving assertions . . . determinations to which we owe considerable deference.").

## V. ADDITIONAL FINDINGS OF FACT

The Court now enters these additional Findings of Fact:

1. Defendant Phoenix Trading, Inc. d/b/a Amercare Products, Inc. ("Amercare") is a Washington corporation. Dkt. #426 at 8:23-9:2.

2. Defendant Hemming is the President and 100% owner of Amercare. *Id.* at 9:3-7.

3. Ms. Hemming requested that her Chinese contact, Jack Chow, identically copy the flexible handle toothbrush with the only change being the name on the packaging. *Id.* at 14:2-7.

4. Mr. Chow advised Ms. Hemming that he could make an identical flexible handle toothbrush. *Id.* at 14:8-10.

5. Mr. Chow sent Ms. Hemming a sample of the flexible handle toothbrush. *Id.* at 14:20-15:1 and Exhibit No. 133. The toothbrush bore Defendants' trade name "Amercare" and the brushes did not bear the legend "Pat. Pend." Exhibit No. 134.

6. Ms. Hemming then sent the sample of to New York City as part of a competitive bid Amercare made to the city. *Id.* at 15:2-5.

BENCH ORDER
PAGE - 4

7. Ms. Hemming entered into a contract with Mr. Chow to manufacture the flexible handle toothbrushes in China. Dkt. #426 at 15:6-9.

8. The only difference between the sample of Plaintiffs' flexible handle toothbrush sent to Ms. Hemming in January 2006 and the flexible handle toothbrush which Ms. Hemming had manufactured in China was the name placed on the toothbrush. *Id.* at 16:8-16 and Exhibit No. 134. The packaging was also different. *Id*. at 25:1-12.

9. Ms. Hemming's intent when she sent the samples to China was to manufacture an identical flexible handle toothbrush and then use the copied flexible handle toothbrush to competitively bid against Plaintiffs for the New York City contract. *Id.* at 16:22-17:1.

10. Ms. Hemming knew when she submitted her bid to New York City that the price she was quoting was below what Plaintiffs were bidding for the New York City contract based on her conversations with Mr. Kayser and quotes he had supplied her for the toothbrushes. *Id.* at 17:2-8.

11. Ms. Hemming intended to bid lower than Plaintiffs to win the New York City contract. *Id.* at 17:9:16.

12. Amercare won the New York City bid for supplying flexible handle toothbrushes. *Id.* at 17:19-21.

13. Amercare began receiving orders for the copied flexible handle toothbrushes from New York City in July 2007. *Id.* at 18:20-19:1 and Exhibit No. 36.

14. In October 2007, Ms. Hemming was aware that Plaintiffs contended that Amercare was infringing on the pending patent application. *Id.* at 21:10-14 and Exhibit 69.

15. On November 16, 2007, Defendants received from Plaintiffs' patent lawyer, Bernie Kleinke, a copy of Loops' application for a utility patent for a flexible handle toothbrush to the US Patent & Trademark Office, Application No. 10/920,822. Dkt. #426 at 19:9-20:4 and Exhibit No. 69.

16. After receiving Plaintiffs' patent application, Defendants continued to import and sell their flexible handle toothbrush to NYC. *Id.* at 20:9-12.

17. On July 11, 2008, Defendants received notice from NYC of the issued '286 patent and Plaintiffs' claims of patent infringement. *Id.* at 21:4-9 and Exhibit No. 116.

18. With the exception of the toothbrushes provided in discovery in this matter, the July 2008 shipment of toothbrushes remains in Defendants' warehouse. Dkt. #426 at 28:18-29:15.

19. Defendants have not imported or sold the toothbrushes after that shipment. *Id.* at 28:18-30:5.

20. Loops did not send Amercare a notice that its patent had issued until June 13, 2008. Dkt. #287 at 5.

21. On October 13, 2008, Plaintiffs filed an amended Complaint alleging a claim for patent infringement of the '286 Patent. Dkt. #41.

22. On December 4, 2008, Defendants filed their Answer which alleged affirmative defenses of Non-Infringement and Patent Invalidity. Dkt. #44 at 11-12.

23. On April 2, 2009, Defendants served responses to interrogatories which represented that the last date of importation of flexible handle toothbrushes was May 2008. Dkt. #380, Ex. B at 26 and 29.

24. On June 9, 2009, Defendants withdrew "from this case [their] claims of patent invalidity, and [their] claims that the product at issue did not fall within one or more claims of the patent at issue." Dkt. #52 at 2.

25. On November 2, 2009, Defendant Hemming testified that she did not know when the last shipment of toothbrushes was imported into the United States. Dkt. #380, Ex. C at 80:22-81:4.

26. On November 23, 2009, Plaintiffs filed a motion for contempt of court sanctions based on Defendants' failure to produce certain documents. Dkt. #110.

27. On March 3, 2010, this Court granted Plaintiffs' motion for contempt, finding Defendants destroyed and/or withheld relevant documents. Dkt. #152 at 7.

28. On March 3, 2010, Defendants filed a motion for summary judgment representing that the last date they imported flexible handle toothbrushes was May 22, 2008. Dkts. #153, #154 at l4. That date actually reflected a shipment date for toothbrushes to New York from Amercare. Dkt. #156, Ex. J.

29. In its July 30, 2010, Order on Summary Judgment, this Court determined that Amercare's last shipment to NYC-DOC occurred before Loops sent Amercare notice on June 13, 2008 that its patent on the Flexbrush had issued. Dkt. #233. The Court also found that Flexbrushes with packaging listing the product's patent number did not enter the United States until September 12, 2008, months after Amercare's last sale to NYC-DOC. *Id.* As a result, this Court held that Loops was not entitled to any monetary damages from Amercare or Ms. Hemming. *Id.* at 7 ("Since all of Amercare's importation and sales of its Amerfresh Soft Handle toothbrush occurred on or prior to May 22, 2008, long before the Loops Flexbrush

was properly marked, section 287 bars Loops from recovering infringement damages."). The Court reached this conclusion based on the evidence before it. Its decision was specifically predicated on the finding that Amercare had not sold any soft handle toothbrushes after May 22, 2008. Shortly thereafter, based on the same understanding regarding the date of the last shipment of Amercare soft handle brushes and the date upon which Amercare was made aware of Loops' issued patent, the Court dismissed plaintiffs' claims for monetary damages against H&L Industrial as well. Dkt. #236.

30. In August, 2010, Plaintiffs sent a Freedom of Information Act request for documents to the State of West Virginia. The request sought vendor catalogs of Amercare products. Shortly thereafter, the State of West Virginia sent Loops Flexbrush, LLC responsive documents. The documents revealed that in December, 2009, Defendants provided a Response to a Request for Quotation to the State of West Virginia. The response was personally signed by Wendy Hemming and notarized by Julie Siegel. Dkt. #262, Ex. F. It contained two price lists, each including a toothbrush, designated by "TB-FLX," called the "Better Than No-Shank Flexible Toothbrush." The TB-FLX brushes were offered for sale for 75 cents each. The price sheet was never produced in discovery, yet the lists themselves contained the marking, "effective date 07/07/07". Dkt. #287 at 9.

31. On March 15, 2011, this Court found that Defendants had engaged "in a pattern of deception and misrepresentation," and that Defendants had violated the Court's prior discovery Order and granted Plaintiffs' motion for sanctions. Dkt. #287. As a result, entered default judgment against Defendants. *Id.*

BENCH ORDER
PAGE - 8

32. On November 19, 2012, the Court held a hearing on Plaintiffs' motion for default damages. Dkt. #340.

33. On March 19, 2013, the Court issued an Order granting Plaintiffs' motion, and awarding default damages in the amount of $54,718.85 against Defendants and attorney fees in the amount of $200,926.00 against Defendants and defense counsel. Dkt. #345.

34. Plaintiffs appealed the Court's default damages Order to the Federal Circuit Court of Appeals. Dkt. #348.

35. On September 5, 2013, Defendants filed their Opening Brief with the Federal Circuit representing they stopped importing the flexible handle toothbrushes when they learned Plaintiffs were claiming infringement. Dkt. #380, Ex. D at 53.

36. On September 9, 2014, former defense counsel Rick Klingbeil represented that the July 2008 toothbrush imports were disclosed by Defendants during discovery. Dkt. #380, Ex. E at p.56-60.

37. On November 13, 2014, the Federal Circuit Court of Appeals affirmed in part and reversed in part this Court's Order on default damages and remanded the matter. Dkt. #360.

38. On July 22, 2015, this Court vacated its prior default damages in part, reinstated Defendants' pleadings, including their Answer and Affirmative Defenses, vacated its prior Order entering monetary sanctions in its entirety, awarded Plaintiffs $187,060.00 in attorney's fees against Defendants as a sanction for Ms. Hemming's false deposition testimony and for their noncompliance with the Court's prior

discovery Order, and ordered that no sanctions would be imposed against former defense counsel Klingbeil.

39. On March 3, 2016, this Court vacated its prior summary judgment Orders in part, and allowed Plaintiffs' patent infringement claim to proceed, limited to the patent infringement claim, only as to Amercare, Wendy Hemming and H&L, and only as to the import in July 2008. Dkt. #405 at 6.

## VI.   CONCLUSIONS OF LAW

1. Jurisdiction lies in this Court under both 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331 because this is an action arising under the patent laws of the United States.

2. A claim for patent infringement arises when an unauthorized party "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent . . . ." 35 U.S.C. § 271(a).

3. Defendants have stipulated to liability in this matter, and agrees that they are liable for damages in the amount of $54,568.00

4. Under 35 U.S.C. § 284, this Court may increase the damages up to three times the amount found or assessed.

5. In *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, __ U.S. __, 136 S. Ct. 1923 (2016), the United States Supreme Court held that an award of enhanced damages is discretionary, is governed by a preponderance of the evidence standard, and that such damages are generally reserved for egregious cases of culpable behavior.

6. The Court concludes that enhanced damages are not warranted in this case. Prior to the issuance of the '286 patent in February of 2008, Defendants did not engage in

infringing conduct. Indeed, it is well-settled that there can be no infringement of any patent prior to its issuance. *See*, *e.g.*, *Cohen v. United States*, 487 F.2d 525, 527 (Cl. Ct. 1973); *Coakwell v. United States,* 372 F.2d 508, 511 (Cl. Ct. 1967); *Muskegon Piston Ring Co. v. Olsen,* 307 F.2d 85, 89 (6th Cir. 1962), *cert. denied*, 371 U.S. 952 (1963); *Inject-O-Meter Mfg. Co. v. North Plains Fertilizer & Co., Inc.*, 308 F. Supp. 538, 541 (N.D. Tex. 1970), *aff'd*, 439 F.2d 1138 (5th Cir.), *cert. denied*, 404 U.S. 824 (1971). The parties agree that on June 13, 2008, Defendants received actual notice of Loops' patent. While Defendants had notice prior to that time of the pending patent application, Ms. Hemming searched for an issued patent prior at the time she ordered her flexible toothbrushes, and found that none had yet issued. Dkt. #426 at 27:23-28:9. After she became aware of the issued patent in June 2008, Ms. Hemming ceased selling or providing the toothbrushes to New York City Department of Corrections. *Id.* at 28:18-30:5. The toothbrushes that had been manufactured and were already in transit to the United States, were received, but remain in Defendants' warehouse to this day. *Id.* at 28:10-29:5. Under these circumstances, the Court does not find that enhanced damages are warranted.

7. Under 35 U.S.C. § 285 the Court may award reasonable attorneys fees to the prevailing party in "exceptional" cases.

8. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, __ U.S. __, 134 S. Ct. 1749, 1756, 188 L. Ed.2d 816 (2014), the United States Supreme Court clarified how courts should analyze fee requests under the Patent Act. The Supreme Court held that a district court analyzing a request for fees under the Patent Act should look to the "totality of the circumstances" to determine if the infringement was

BENCH ORDER
PAGE - 11

exceptional. *Octane Fitness*, 134 S. Ct. at 1756. The court also explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* The Court eschewed a "precise rule or formula for making these determinations" and instructed that equitable discretion should be exercised 'in light of the considerations we have identified.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)). Specifically, the Court cited a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id. at 1756 n.6* (quoting *Fogerty*, 510 U.S. at 534 n.19). The Court further clarified that the applicable burden of proof for fee entitlement was the preponderance of the evidence standard and not proof by "clear and convincing evidence." *Id.* at 1758.

9. The Court concludes that this is not an "exceptional" case warranting an award of attorneys' fees. With the exception of the single patent infringement claim at issue in this Order, all of Plaintiffs' claims were dismissed on the merits. The conduct for which Defendants were sanctioned related to procedural issues before this Court. Defendants have already received sanctions sufficient for the purpose of deterrence of future similar conduct. Once the legal issues were narrowed for trial by the Court, Defendants conceded liability and agreed to the entry of an award for damages against them. Looking at the allegations as a whole and the totality of the

BENCH ORDER
PAGE - 12

circumstances in this case, there is nothing that makes this matter any more exceptional than other patent cases involving similar conduct.

### VII.   CONCLUSION

Having entered the above Findings of Fact and Conclusions of Law, the Court hereby ORDERS that:

1. Defendants' shall pay Plaintiffs $54,718.85 for their infringement of United States Patent No. 7,334,286 for Toothbrush and Methods of Making and Using Same ('286 Patent).

2. Defendants are permanently enjoined from any conduct infringing the '286 patent for as long as it is valid.

3. Defendants are directed to dispose of the flexible toothbrushes currently being stored in their warehouse <u>by donating them to a shelter(s) for the homeless of their choice</u>.

4. Plaintiffs are not entitled to treble damages under 35 U.S.C. § 284.

5. Plaintiffs are not entitled to attorneys' fees under 35 U.S.C. § 285.

6. This matter is now CLOSED.

DATED this 9th day of November 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

BENCH ORDER
PAGE - 13